# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| WORLD WRESTLING ENTERTAINMENT, INC., </br></br>Plaintiff, </br></br>vs. </br></br>J.F. RAMOS – REPRESENTAÇÕES, LDA, </br></br>Defendant. | Civil Action No._____ </br></br></br></br></br></br></br></br></br></br>SEPTEMBER 2, 2010 |

## COMPLAINT

Plaintiff World Wrestling Entertainment, Inc. ("WWE"), by and through its undersigned counsel, hereby files this Complaint against Defendant J.F. Ramos – Representações, LDA ("Ramos") seeking, among other things, a declaratory judgment, and in support thereof, avers as follows.

## NATURE OF THE CASE

1.  This is a declaratory judgment action by a licensor (WWE) against its licensee (Ramos).

2.  WWE seeks a declaration that Ramos, pursuant to the parties' license agreement, must indemnify WWE for all damages, attorneys' fees, and other costs incurred in an underlying action now pending against WWE in France and which arises from Ramos's breach of the parties' license agreement.

1

## PARTIES

3.      Plaintiff World Wrestling Entertainment, Inc. is a Delaware corporation having its principal place of business at 1241 East Main Street, Stamford, Connecticut  06902. WWE is an integrated media and entertainment company principally engaged in the development, promotion, and marketing of television programming, pay-per-view programming, and live arena events, and the licensing and sale of branded consumer products featuring its brands.

4.      Defendant J.F. Ramos – Representações, LDA is a Portuguese corporation having its principal place of business at Apartado 5227, Quimiparque 2830 Barreiro, Portugal. Ramos is the distributor of a variety of licensed products, including products licensed from WWE.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332.  There exists complete diversity of citizenship between WWE, which is a Delaware corporation with its principal place of business in Connecticut, and Ramos, which is a Portuguese corporation with its principal place of business in Portugal.  The amount in controversy, exclusive of interest and costs, exceeds $75,000, as, for example, the claim against WWE in the underlying action is in excess of 17 million Euros (*i.e*., over 21 million U.S. dollars).

6.      This Court also has the authority to adjudicate the rights of the parties under 28 U.S.C. §§ 2201-2202.

7.      This Court has personal jurisdiction, as Ramos has consented to jurisdiction in this Court in Section N(13) in the standard terms and conditions of the license agreement.

8. Venue for this matter lies in this District under 28 U.S.C. § 1391(d), as an alien may be sued in any District. Furthermore, Ramos has consented to venue in this District in Section N(13) in the standard terms and conditions of the license agreement.

## FACTUAL BACKGROUND

**A.     The License Agreement**

9. WWE and Ramos entered into a license agreement dated as of January 1, 2009, with a term to expire on December 31, 2010 ("License Agreement"). A copy of the License Agreement is attached as Exhibit A.

10. Under Section 2(A) of the License Agreement and subject to certain important conditions, WWE granted to Ramos the non-exclusive right and license to use WWE's intellectual property in connection with the manufacture, distribution, and sale of specifically denominated "Licensed Products" (*i.e.*, outer apparel, like trousers and t-shirts, and accessories, like hats and gloves).

11. Section 11 of the License Agreement provides that it "is subject to all of the provisions of the Standard Terms and Conditions that are attached to and made a part of this Agreement by reference."

12. Section A(2)(b) of the Standard Terms and Conditions of the License Agreement requires that Ramos obtain WWE's pre-approval in order to sell and distribute any Licensed Products, including requiring Ramos to submit written concepts, pre-production prototypes, pre-production samples, and/or production samples of all Licensed Products to WWE for its review and prior written approval.

13. Section L(1)(a)(i) of the Standard Terms and Conditions of the License Agreement authorizes WWE to immediately terminate the License Agreement "[i]f Licensee has

failed to comply with any requirement of the approval process for Licensed Products described in Section A(2)(b) above."

14. Section (H)(1) of the Standard Terms and Conditions of the License Agreement requires, among other things, Ramos to indemnify WWE for its losses, damages, expenses, attorneys' fees, and similar costs for any claim against WWE arising from Ramos's unauthorized use of the Licensed Products, breach of the Licensed Agreement, or fraudulent behavior. Section (H)(1) provides in full:

> H(l) <u>Licensee's indemnification</u>. Licensee will be solely responsible for and will indemnify, defend and hold WWE and its licensees, successors and assigns, parent corporations, member corporations, subsidiaries and affiliates and its and their respective officers, directors, members, employees, advertisers, insurers, and representatives (collectively referred to as "Indemnified Parties") harmless from any and all claims, suits, liabilities, judgments, penalties, losses, costs, damages, and expenses resulting therefrom, including reasonable attorneys' fees (including an appropriate allocation for in-house counsel and paralegal fees) arising from or by reason of or in connection with the manufacture, distribution, advertising, promotion, offering for sale and sale of the Licensed Products which includes any claims or suits against the Indemnified Parties by reason of: (i) any unauthorized use, infringement or alleged infringement of any trademark, service mark, copyright, patent, process, method or device owned or controlled by a third party and exploited by Licensee in connection with the Licensed Products, the Advertising Materials and/or this Agreement; (ii) any defects, alleged defects and/or deficiencies (whether obvious or hidden and whether or not present in any sample approved by WWE) in said Licensed Products or the use thereof, or for any false advertising, fraud or misrepresentations or other claims related to the Licensed Products and/or the Advertising Materials (not involving a claim of right to the Intellectual Property) or in any packaging or other materials relating to the Licensed Products (including Advertising Materials); (iii) any claim that the use of any design or other graphic component of any Licensed Product (other than the Intellectual Property) violates or infringes upon the trademark, copyright or other intellectual property rights (including trade dress) of a third party; (iv) any unauthorized uses of the Licensed Products or Advertising Materials by Licensee; (v) any libel or slander against, or invasion of the right of privacy, publicity or property of, or in violation or misappropriation of any other right of any third party as it relates in any manner whatsoever to the exploitation of Licensee's rights under this Agreement; (vi) any

4

agreements or alleged agreements, whether written or oral, made or entered into by or with Licensee to effectuate the terms of this Agreement, including any employment or consulting agreements entered into by Licensee related in any manner to the exploitation of this Agreement and any such other agreements entered into by Licensee that relates to the manufacture, distribution, exploitation, advertising, sale or use of the Licensed Products by Licensee, its agents and/or representatives; (vii) any Promotions or contests conducted by Licensee related to this Agreement; (viii) any breach or alleged breach of the terms, representations and warranties under this Agreement by Licensee, its subsidiaries, manufacturers, distributors, advertisers or other persons, employees or agents of any of the foregoing; (ix) any act concerning the unconscionable commercial practice, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression of omission of any material fact in the advertising or promotion of the Licensed Products; (x) any act or omission arising out of or related in any manner to this Agreement and/or (xi) any other act under or in violation of this Agreement by Licensee, its subsidiaries, manufacturers, distributors, advertisers or other persons, employees or agents of any of the foregoing.

**B.     Ramos Breaches the License Agreement**

15.     In 2009 and unbeknownst to WWE, Ramos manufactured certain clothing containing WWE's intellectual property—clothing which had not submitted for approval to WWE as required by Section A(2)(b) of the Standard Terms and Conditions of the License Agreement ("Counterfeit Clothing"). Ramos then sold this Counterfeit Clothing to a French company, Sun City, CIE-DND ("Sun City"), which it, in turn, sold to various French supermarkets.

16.     WWE later became aware of the sale of the Counterfeit Clothing in French supermarkets by Sun City, recognized it as involving unapproved products, and in December 2009, sent Sun City a cease-and-desist letter.

17.     Sun City responded by asking Ramos whether the Counterfeit Clothing had been approved, and Ramos, in response, deceptively created fraudulent approval sheets

(based on prior forms where WWE had, in fact, denied Ramos approval for the distribution of certain products), and provided these fraudulent approval sheets to Sun City.

**C.     The Underlying Action**

18.     On or about July 19, 2010, WWE was served with a complaint filed by Sun City in the Paris Court of First Instance ("Underlying Action").  A copy of the complaint and an English-translated version of the complaint in the Underlying Action is attached as Exhibit B.

19.     In the Underlying Action, Sun City, relying upon the fraudulent approval sheets submitted to it by Ramos, contends that the Counterfeit Clothing was, in fact, not counterfeit, but was approved by WWE and therefore lawfully obtained from Ramos.  Sun City further claims, among other things, that WWE engaged in unfair commercial practices by "succeeding in diverting Sun City's customers through false accusations of counterfeiting to the clients of the plaintiff."  Sun City's allegations are false; contrary to Sun City's allegations, the product sold by Ramos to Sun City, and then by Sun City to its customers, was the Counterfeit Clothing—*i.e.*, WWE never approved for sale the Counterfeit Clothing.

20.     In the Underlying Action, Sun City seeks damages against WWE in excess of 17 million Euros.

**D.     WWE Terminates the License Agreement and Files Suit**

21.     On September 2, 2010, based on Ramos's breach of the License Agreement, WWE provided Ramos with written notice of termination of the License Agreement for, among other reasons, Ramos's breach of Section A(2)(b) of the Standard Terms and Conditions of the License Agreement.  A copy of the termination letter is attached as Exhibit C.

22. On September 2, 2010, WWE filed the present action, seeking a declaration of rights with respect to Ramos's indemnification obligations arising from its breach of the License Agreement and with respect to the Underlying Action.

## LEGAL CLAIMS

### COUNT I—Declaratory Judgment
### (Indemnification)

23. WWE realleges each of the foregoing paragraphs of this Complaint as if set forth fully herein.

24. Ramos breached the License Agreement, including by failing to obtain WWE's approval to sell the Counterfeit Clothing to Sun City.

25. As a result of Ramos's breach of the License Agreement and Ramos's submission of fraudulent approval forms to Sun City, Sun City sued WWE in the Underlying Action, and WWE faces potential liability for damages, as well as having to incur defense costs in defending itself in the Underlying Action.

26. The License Agreement requires Ramos to indemnify WWE for any and "all claims, suits, liabilities, judgments, penalties, losses, costs, damages, and expenses resulting therefrom, including reasonable attorneys' fees (including an appropriate allocation for in-house counsel and paralegal fees). . ." in connection with the Underlying Action.

27. The parties are engaged in a sufficiently adverse, actual, and justiciable controversy at this time, and this Court is capable of adjudicating the questions pertaining to Ramos's contractual obligation to indemnify WWE.

## COUNT II—Breach of Contract
### (Indemnification)

28. Ramos realleges each of the foregoing paragraphs of this Complaint as if set forth fully herein.

29. Ramos breached the License Agreement, including by failing to obtain WWE's approval to sell the Counterfeit Clothing to Sun City.

30. As a result of Ramos's breach of the License Agreement and Ramos's submission of fraudulent approval forms to Sun City, Sun City sued WWE in the Underlying Action, and WWE faces potential liability for damages, as well as incurring defense costs in defending itself in the Underlying Action.

31. The License Agreement requires Ramos to indemnify WWE for any and "all claims, suits, liabilities, judgments, penalties, losses, costs, damages, and expenses resulting therefrom, including reasonable attorneys' fees (including an appropriate allocation for in-house counsel and paralegal fees). . ." in connection with the Underlying Action.

32. Due to its breach, Ramos owes WWE damages at least in the amount of the attorneys' fees and costs already incurred in defense of the Underlying Action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff hereby demands the following declaratory, equitable, legal, and other relief against Defendant:

(a) a declaration that Defendant must indemnify Plaintiff for all claims, suits, liabilities, judgments, penalties, losses, costs, damages, and expenses resulting therefrom, including reasonable attorneys' fees (including an appropriate allocation for in-house counsel and paralegal fees) that it has incurred or may incur in connection with the Underlying Action;

(b) damages in the amount of costs and reasonable attorneys' fees already incurred by WWE in defense of the Underlying Action;

(c) attorneys' fees and costs incurred in the prosecution of the present action, which Plaintiff is entitled to pursuant to contract (Section H(1) of the Standard Terms and Conditions of the License Agreement); and

(d) such other legal and equitable relief as this Court may deem just and proper.

**A JURY TRIAL IS HEREBY DEMANDED.**

PLAINTIFF WORLD WRESTLING ENTERTAINMENT, INC.

<u>/s/ Jonathan B. Tropp</u>
Jonathan B. Tropp (ct11295)
Richard P. Colbert (ct08721)
Day Pitney LLP
One Canterbury Green
Stamford, CT 06901
Telephone:  (203) 977-7300
Facsimile:   (203) 977-7301
Email:  jbtropp@daypitney.com
Email:  rpcolbert@daypitney.com

*Of Counsel*:
Jerry S. McDevitt
Curtis B. Krasik
J. Nicholas Ranjan
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA  15222
Telephone:  (412) 355-6500
Facsimile:   (412) 355-6501
Email:  jerry.mcdevitt@klgates.com
Email:  curtis.krasik@klgates.com
Email:  nicholas.ranjan@klgates.com