**EXHIBIT B**

# Summons before the Paris Court of First Instance

THE YEAR TWO-THOUSAND AND TEN
AND

**BY REQUEST FROM:**

**The company SUN CITY (CIE DND)** a company under French law, having its registered office at 25 avenue du Bois de la Pie, 93290 TREMBLAY EN FRANCE, registered in the Bobigny business and companies register under number 334 692 290, under the number, represented by the legal representative.

**The Plaintiff**

*With the attorney and chosen address at:*

Randy YALOZ, Attorney
Paris Bar
3, rue de Saint Simon
75007 Paris, France
Box E 766

Attorney

Bailiff

Residing:

HEREBY INFORMS

1

1) **SCEMAMA SNC**, a company under French law, located at 12, Villa Compoint, 75017 Paris, registered with the Paris business and companies register under number 408 955 482;

2) **SCEMAMA INTERNATIONAL SARL**, a company under French law, located at 12 Villa Compoint, 75017 Paris, registered with the Paris business and companies register under number 441 961 737;

3) **WORLD WRESTLING ENTERTAINMENT, INC.**, a company under American law, registered in the state of Delaware, located 1241 East Main Street, Stamford, Connecticut 06902, USA;

4) **TVMANIA GmbH**, a company under German law, located Oststrasse 14 DE-40764 Lagendfeld, Nordrhein-Westfalen, Germany; and

5) **LAMALOLI GmbH**, a company under German law, located Grandkaule 11, 53859 Niderkassel, Germany.

**The Defendants**

Who are brought before the Paris Court of First Instance, 4 Boulevard du Palais, 75001 Paris, due to the reasons described below;

They are furthermore reminded, in accordance with Articles 56, 644 et seq, 752 and 755 of the Code of Civil Procedure:

That, within fifteen (15) days, plus a period of two months for companies based abroad, from the date hereof, the parties shall appoint a lawyer to represent them before the Court.

That failing to do so, they risk a verdict being made against them based on the evidence supplied by their adversaries.

### THE SUBJECT OF THE REQUEST

The purpose of this proceeding is, firstly, to convict the defendants due to their acts of unfair competition, complicity in unfair competition, diverting of customers, complicity in the diverting of customers, partitioning of the French and community market for licenses relating to Licensed Products from the company World Wrestling Entertainment Inc. (hereinafter "WWE") and complicity in partitioning the French and community market for the same products.

Secondly, the purpose of this proceeding is to obtain the expiry and/or cancellation of the community trademarks held by the company World Wrestling Entertainment, Inc. described in the Chart of Improperly Trademarks Filed by the company World Wrestling Entertainment, Inc. (Exhibit No. 38) and systematically filed in completely improper way.

### I.  Facts and Proceeding

### SYNOPSIS CONCERNING OF THE PARTIES INVOLVED IN THIS CASE OF UNFAIR COMPETITION AND UNLAWFUL PARTITIONING OF THE INTERNAL MARKET OF WWE TEXTILE PRODUCTS, PARTICULARLY IN FRANCE

**The company World Wrestling Entertainment, Inc. ("WWE")** is an American company owning an entire set of rights, including trademarks, on its famous televised wrestling programs and the images and personalities of the wrestlers (exhibit No. 1). Throughout the world, WWE entrusts the question of its legal rights for the WWE merchandise to its licensees. In Europe, its principal agent is **the company CPLG** (exhibit No. 32). WWE receives royalties for all sold WWE merchandise, typically in the amount of 12% of the net selling price of the WWE merchandise. Its interest is thus to sell WWE merchandise as expensive as possible.

The company WWE has entered a license agreement with **the German company TVMania GmbH** ("TVMania") regarding WWE textile products notably in France and Germany (exhibit No. 3). The company TVMania manages the contact with the distributers, retailers and/or commercial agents in each European country to sell the WWE merchandise to supermarkets (Cora, Carrefour, E.Leclerc, etc.), wholesalers and local retailers. It also sells WWE merchandise over the internet via the website of the German company **Lamaloli GmbH** ("Lamaloli"), **www.lamaloli.com**.

In France, the companies TVMania and Lamaloli are corporate partners (commercial agents), **the companies Scemama SNC** ("Scemama") and **Scemama International SARL** ("Scemama International"), who operate the French internet sites **www.lamaloli.com** (sale to the public) and **www.wholesale.lamaloli.com** (sale to wholesalers and textile retailers). As sales agents they also sell WWE merchandise directly to supermarkets (E.Leclerc, Kiabi, Carrefour, Auchan, Cora) on behalf of TVMania and to wholesalers and textile retailers on behalf of Lamaloli.

3

The Plaintiff, **Sun City Cle-Dnd** ("Sun City") is a victim of the fraudulent and illegal behaviour by the companies WWE, TVMania, Lamaloli, Scemama and Scemama International. In fact, Sun City is the direct competitor to these four companies, whereof the last two are in France. Some of its major customers happen to be the same as theirs, namely the supermarkets Carrefour, Cora, E.Leclerc, Kiabi and others.

In fact, Sun City has purchased WWE merchandise in Portugal from a licensee of WWE, **the Portuguese company J.F Ramos** (*exhibit No. 15*) for the purpose of sale in France to its customers. All its official WWE merchandise has been approved by WWE (*exhibit no. 14 and 15*), the sale of them has been declared by the company J.F. Ramos to WWE (*exhibit no. 16*) and royalties of more than 34,000 §US have been paid by J.F. Ramos (*exhibit no. 17 and 18*).

**The WWE merchandise concerned in this proceeding was thus all, without exception, approved and genuine WWE products of which the appropriate royalties have been paid to WWE.**

Thus, the companies Scemama, Scemama International, Lamaloli, TVMania and WWE operate an illicit and very strict control of the official WWE products in France. They have put in place an entirely unlawful system of surveillance of the parallel sales, controlling all references of the official WWE products sold (*exhibit no. 34*), in order to identify the competing retailers and to eliminate them from a defined area (France) by any means necessary.

During the summer of 2009, they became aware through their surveillance of the supermarkets E.Leclerc and Kiabi that Sun City sold official WWE products to the same clients as themselves. They therefore decided to eradicate Sun City from the market by resorting to illegal methods. They have in fact given notice to Sun City's customers (*exhibit nos. 22 to 26*) accusing it of selling counterfeit and illegal WWE products.

They have thereafter tried to recover Sun City's market by offering them the same WWE products.

The company Sun City thus finds itself forced to seek the sought relief in order to preserve the evidence of conspiracy between the companies Scemama, Scemama International, Lamaloli, TVMania and WWE to partition the internal market for the sale of WWE products and to unfairly exclude their competitor Sun City.

4

SUMMARY OUTLINE OF THE RELATIONSHIP BETWEEN THE PARTIES INVOLVED IN THIS CASE



5

1.    **Presentation of the Parties**

**1.1    Presentation of the Defendants in unlawful agreement**

**1.1.1    The Company WORLD WRESTLING ENTERTAINMENT, INC. ("WWE")**

The company **World Wrestling Entertainment, Inc. ("WWE")** is an American company specialising in the American fighting sport often referred to as "catch" (wrestling). It holds the title to several trademarks relating to famous wrestlers employed by it and the sporting events that it organises. It organises fights that are broadcasted around the world and, in particular, in most European countries. All of WWE's activities have tremendous success, particularly among teenagers (*exhibit no. 1*).

The French company Copyright Promotions Licensing Group (hereinafter "CPLG") acts as licensee for WWE in the United Kingdom, Spain, Portugal ("CPLG Portugal"), Germany, France ("CPLG France") and Benelux (exhibit no. 32). WWE uses it to manage its right in regards to WWE merchandise in Europe.

With the help of several accomplices, in particular the German companies TVMania GmbH and Lamaloli GmbH, and the French companies Scemama SNC and Scemama International SARL, the company WWE has established within the European Union a strict and coercive system of license granting, subdivided by territory or country, threatening to cancel and claim damages of any who opposes the territorial restrictions and who sells products to professionals outside the territorial network.

This system is highly controlled in each country; WWE's licensees and partners are in charge of overseeing the all the official EU distributers of WWE merchandise and to report any parallel sales made outside the territory of origin (*see especially exhibit no. 34*).

WWE commissioned one of its licensees, the company TVMania GmbH and its commercial agents, the companies Scemama and Scemama International to go check in a French store of the chain E.Leclerc, a client of one of the Plaintiff, the presence of official WWE products which are the objects of this case (*exhibit nos. 31 and 34*). The photographs taken on this occasion by the French partners of TVMania GmbH, Scemama SNC and Scemama International SARL each bear, on the upper left side, the words "**WWE cross-boarding**" (*exhibit no. 34*), which demonstrates **the control of the "parallel sales"** by WWE and its accomplices.

Community and national rules and case law relating to free trade, the free movement of goods and property and free pricing forbid anyone to prevent trade between the EU member states by territorial restrictions, direct or indirect control of prices charged by licensees and any other measure aimed at unlawfully partitioning the EU internal market or to distort free competition.

These prohibitions are in particular based on Article 3 of the Treaty of Rome, Articles 81-84 of the Treaty establishing the European Community (Articles 101-109 under the new codification of the Treaty of Lisbon) and the EC Regulation No. 1/2003.

It is thus highly illegal that the company WWE and its accomplices force an artificially high pricing of its products and that WWE thereby is ensured payment of higher royalties and exorbitant sums as a guaranteed minimum.

In fact, WWE receives a percentage of about 12% of the net sales made by its licensees (*exhibit No. 2*). Thus, WWE has a vested interest in that the merchandise is sold at the highest possible price as its fees will be all the larger. As the fixation of prices is prohibited in the European Union for the abovementioned reasons, WWE cannot demand that its licensees sell the WWE merchandise at a fixed price. WWE, its agents and its partners have thus found a totally illegal solution to circumvent the law in force in this regard.

In fact, once the minimum guarantee is paid by the new licensee, WWE control the prices vis-à-vis the final consumer (*exhibit No. 34*) and gets rid of licensees, who do not sell WWE merchandise expensive enough and do not bring sufficient royalties, by denouncing them as third party infringers in front of their clients, which puts an immediate end to the unwanted agent's activities and excludes him from the market in the territory or country in question.

Thereafter, it sends to the same threatened clients its new licensees and/or partners and they offer them the same WWE merchandise at higher prices. This is precisely what happened in this case.

Thus, as WWE could not legally prevent its licensee from selling to certain types of people in Europe or force them to sell products at a fixed price, WWE, its licensees and partners have found an illegal but highly effective alternative to serve their interests and to illegally hinder free trade and free competition within the European Union.

To do this, WWE, TVMania GmbH and their German partner (Lamaloli) and French partner Scemama and Scemama International) do not shy away from illegal measures like the dissemination of false information to customers of rival companies which causes damage to their credibility, their reputation and the consecutive or concurrent diversion of the same customers (*see exhibits Nos. 22-26*).

This allows the company WWE, its licensee TVMania and their various partners to partition the European market of licensed WWE products ensuring them illegal exclusivity on the sale of official WWE merchandise in a specific country or territory.

WWE and its accomplices thereby ensures, firstly, that they receive larger royalties, and, secondly, the elimination their competitors like Sun City from the market for WWE products and thereby to sell the same products at much higher prices and margins.

These different manipulations have thereby permitted the company WWE, its licensee TVMania GmbH and its European accomplices to completely block the ordering of WWE products from their competitors such as the company Sun City, a French company that bought official WWE products from the Portuguese licensee J.F. Ramos.

In December 2009, Sun City's various clients have in fact received warning notices from WWE (exhibits Nos. 22, 23, 24, 25 and 26) accusing Sun City of having sold them counterfeit WWE products, although WWE and its agent had known perfectly well the entirely lawful origin of said products since June 2009 (exhibits Nos. 27, 28, 29, 31, and 34).

This strategy has shown itself to be very efficient as several of Sun City's customers immediately froze their orders (see, among others, exhibits Nos. 24 and 25).

WWE, its licensee TVMania and its partners thereby force the importers like Sun City to stop supplying their customers as the confidence is completely lost and they are completely discredited on a highly competitive and limited economic market as that of France.

In this way, the system established in Europe by WWE, its licensee TVMania and their partners Lamaloli GmbH, Scemama SNC and Scemama International SARL remains intact permitting them to completely partition the European market, to fix the prices at their convenience and the prevent anyone from purchasing official WWE merchandise for resale, threatening potential customers with infringement proceedings.

However, the products sold by Sun City were Official WWE products purchased from J.F. Ramos, a licensee of WWE. The Products in question were approved by WWE and J.F. Ramos has paid royalties to WWE for each sale of these products to Sun City (see invoices made out by J.F. Ramos to Sun City; exhibit No. 15, the approval by WWE of the same WWE Products sold by J.F. Ramos to Sun City, exhibit No. 14, the declaration of corresponding royalties made to WWE, exhibit no. 16 and the proof of payment of royalties by J.F. Ramos to WWE, exhibit No. 18).

It appears that the actions of WWE, its licensee TVMania GmbH and their German and French partners Lamaloli GmbH, Scemama SNC and Scemama International are thus totally illegal and must be sanctioned as they have caused harm, both material and moral, to the company Sun City, who must be compensated therefore.

### 1.1.2  TVMania GmbH, Licensee and Accomplice of WWE, and its Partners Lamaloli GmbH, Scemama SNC and Scemama International SARL

All the actions of WWE and its accomplices have been aimed at bettering the position of TVMania GMBH, licensee of WWE in Europe, and its partners Lamaloli GmbH, Scemama SNC and Scemama International SARL on the French and German markets.

8

In this way, WWE was assured of higher royalties than those paid by J.F. Ramos for the same Products and WWE and its accomplices were able to exclude the competitor Sun City de facto from the French market (*see comparative table with documentation, exhibit No. 35*).

The German company TVMania GmbH is the leading European manufacturer and distributor of products derived from TV programs. It manufactures and sells to wholesalers, retailers and supermarkets, in particular, textile products for teenagers, just like the Plaintiff. TVMania GmbH supplies to all European countries, amounting to no less than 7,500 points of sale in Europe (*see the information appearing on its internet site www.tvmania.de, exhibit No. 3*).

Among the clients declared by TVMania GmbH in France are the companies 3suisse.fr, Gémo, La Halle, Auchan, Carrefour, E.Leclerc, Cora, Kiabi (*exhibit No. 3*). The last four are also customers of the Plaintiff Sun City to which the latter sold official WWE products.

TVMania is likewise one of WWE's accomplices in the illegal surveillance of the European markets of WWE merchandise, as shown by the evidence presented in the proceeding.

On 24 June 2009, through the intermediary of its licensee, WWE informed the company KIABI, Sun City's customer, that **TVMania had warned them** that Sun City wished to sell WWE Products to the company Kiabi (*see exhibit No. 31 below*).

--------Original message--------
From: Galani, Concetta (CPLG France) [mailto:cgalani@fr.cplg.com]
Sent : Wednesday 24 June 2009 16:24
To : Enf/ Resp.Coll/ E LEONLEFRANC
Cc: Walker, Ross
Importance: High

WWE

Dear Madam,

I contact you because I have learned from our licensee TCM that you are thinking of purchasing pyjamas with portraits of WWE wrestlers from the company Cie-Dnd.


TVMania

Since Cie-DND does not hold a license for the French market, we need to identify from which licensee it is supplied and we need to verify that the merchandise offered to you is approved and that the licensee in question has made a request to the copyright owner regarding the supply of demand for export via a third party distributor.

This is why we ask of you the send us visual copies of the merchandise offered to you.

I remain at your disposal for any further information that you should want and I take the liberty of copying the copyright owner of WWE, Mr. Ross Walker, so that he is informed of our exchange.


WWE

While waiting for the requested information,
Sincerely yours,

Concetta GALANI, Sales & Marketing Director
cgalani@fr.cplg.com, +33 1 44 09 17 61

9

*Email received 24 June 2009 by the company KIABI, exhibit no. 31*

Thus, with the complicity of its licensee TVMania GmbH, WWE has managed to illegally partition the European market for WWE merchandise by resorting to fraudulent measures, such as diverting customers.

To this end, TVMania turned to its partners, the German companies Lamaloli GmbH and French companies Scemama CNS and Scemama International Ltd., to commercialize WWE merchandise especially in France, to oversee the French market and displacing Sun City when the opportunity arose. The links between these four companies are definitely established, as evidenced by the factors noted below.

### 1.1.3   The Company Lamaloli GmbH

### A) Lamaloli GmbH is linked to the French companies Scemama SNC and Scemama International SARL

The German company Lamaloli GmbH, located Langenfeld, Rheinpromenade 6, 40789 Monheim, Germany, is run by Mr. Yaïr Agami, born on 27 March 1970, residing in Israel (*see information regarding Lamaloli GmbH, exhibit No. 8*). It sells WWE merchandise in all of Europe (*see Lamaloli catalogue 2010, exhibit No. 6.6*).

Lamaloli GmbH uses the internet site www.lamaloli.com. This site resends directly to the French internet site www.lamaloli.fr. The owner of the two domain names is the same person, Mr. Yaïr Agami (*see copy of the domain name directory for these two sites, exhibit Nos. 6.1 and 6.2*).

Thus, to create a wholesale account on the site www.lamaloli.fr, certain documents are necessary and must be sent to "**Caroline with SCEMAMA -- 12 Villa Compoint -- 75017 Paris**".

| | |
|---|---|
| **LamaLoLl – Makes children Dream** | Tel: 01 76 43 74 38 |
| | Email: support@lamaloli.fr |
| | www.lamaloli.fr / www.wholesale.lamaloli.fr |

Dear customer,

We thank you for your email and your interest in our site.

LamaLoLi is a web shop specialised in licenses for children. Clothes and accessorises with portraits of the children's favourite heroes are gathered here (Hello Kitty, Spiderman, Dora, Barbie...)

As a professional you have privileged access to the site http://www.wholesale.lamaloli.fr. This makes you able to benefit from very attractive prices and a number of other advantages;

To do this:
1 – Please provide us with your telephone number.
2 – Your K-Bis extract as well as your VAT number and your RCS inscription no. (if you have one).

10



- by email to: support@lamaloli.fr
- by fax to: 01.42.47.18.30
- by mail: for the attention of Caroline at SCEMAMA – 12 Villa Compoint – 75017 Paris

3 – Log on to the site http://www.lamaloli.fr

4 – After receiving your K-bis extract we will activate a "wholesale" account

5 – Once you have received our email confirming the activation of you account, log on to the site http://www.wholesale.lamaloli.fr

      Useful information:

- to validate the access to the professional site and place your first order it is imperative that we have received a K-Bis extract.

- the prices include TVA.

- payment of your invoice is done exclusively on line via PayPal or by credit card.

- expedition costs amount to 12.95€ for 1-3 boxes* - More than that, contact us.

- delivery of your order happens within 5 – 10 days*.

For additional information, please contact our commercial service at support@lamaloli.fr or by phone 01.75.43.74.38


*concerning all deliveries in Metropolitan France

***Email from Lamaloli confirming registration on its French Internet site, http://www.lamaloli.fr referring directly to Scemama in France, exhibit No. 7***

The indicated contact person is Madame Caroline ITTAH, Sales Manager of Lamaloli GmbH (*exhibit No. 21*).

**The links between the company Lamaloli GmbH and the French companies Scemama SNC and Scemama International SARL are thus unquestionably established.**

**B) Lamaloli GmbH is linked to the licensed German Agent of WWE, TVMania GmbH**

Regarding on line purchases of its products, the company TVMania GmbH has signed an exclusive distribution agreement with the company Lamaloli GmbH and its own internet site **www.tvmania.de** redirects directly to the internet site **www.lamaloli.com** (*exhibit No. 3*).



**Extract from TVMania GmbH's internet site, category "Online store", exhibit No. 3**

Moreover, the same internet site of the company TVMania GmbH refers as contact address in German to that of the company Lamaloli GmbH.



*Extract from TVMania GmbH's internet site, category "Contact us", exhibit No. 3*

**The links between Lamaloli GmbH and WWE's licensee for Europe, TVMania GmbH are thus thoroughly established.**

### 1.1.4 SNC Scemama

SNC Scemama is a French company registered with the R.C.S in Paris under number 408 955 482 (*exhibit No. 9*). Its registered office is at 12, Villa Compoint, 75017 Paris.

Its activity relates to "*acting as intermediary, commissioning, brokerage of textiles, clothing*". In other words, SNC Scemama acts as commercial agent for the German companies TVMania and Lamaloli on the same market as Sun City, as it supplies the same textile products and clothing (namely WWE) to professionals.

The company Scemama thus supplies, via the site www.lamaloli.fr, the network of French supermarkets, retailers and wholesalers. The internet site even has a category "wholesalers" redirecting to the site www.wholesale.lamaloli.fr (*see exhibit No. 7*). The Plaintiff Sun City thus constitutes a direct competitor.

13



*Scemama advertisement for the internet site www.lamaloli.fr published in the Journal du Textile on 9 February 2010, exhibit No. 33*

### 1.1.5   SARL Scemama International

### A)   SARL Scemama International is completely linked to SNC Scemama and to the company Lamaloli GmbH

The sole shareholder of SNC Scemama is **SARL Scemama International**, registered with the R.C.S in Paris under number 441 961 737 and with the same registered address as SNC Scemama at 12, Villa Compoint, 75017 Paris (*see exhibits Nos. 9, 20 and 21*).

Moreover, The Sales Manager of the company Lamaloli, according to the same professional internet site, is Madame Caroline ITTAH (*exhibit No. 21*).

The links between the companies WWE, Lamaloli GmbH, Scemama SNC and Scemama International are entirely established and explains their complicity in the acts of diverting customers and of partitioning the French market for WWE Products in this case.

The articles of association of the company Scemama International SARL, who is the sole shareholder in SNC Scemama, shows that Mr. Isaac ITTAH, born on 6 May 1969 in Rabat, is founder and shareholder of this company, whose registered office also is at 12, Villa Compoint 75017 Paris (*exhibit No. 20*).

We are thus dealing with three companies, Lamaloli GmbH, Scemama SNC and Scemama International SARL founded and managed by members of the same family and/or relatives, which explains their unlawful attempt to oust the company Sun City from the market for WWE Products in France.

**B) SARL Scemama International is completely linked to WWE's licensee TVMania GmbH**

**The company Scemama International** is linked to WWE's licensee TVMania GmbH since the email address to contact TVMania is gmarechal@scemama-int.com (*exhibit No. 5*).

Moreover, the same internet site of TVMania GmbH shows as the contact address in France the address of the company Scemama International:



**Extract from TVMania's internet site, category "Contact us", exhibit no. 3**

15

**Thus, the companies TVMania GmbH, Lamaloli GmbH, Scemama SNC and Scemama International SARL are interrelated and accomplices in the act of diverting customers, unfair competition and partitioning the internal market for WWE merchandise, especially in France, in their interests and in those of the company WWE.**

### 1.1.6.   The Portuguese Officially Licensee of WWE, J.F. Ramos-Representaçoes Lda ("J.F. Ramos"), Seller of the Official WWE Merchandise purchased by Sun City.

**The Portuguese company J.F. Ramos** is specialised in the commercialisation and distribution of licensed textile products.

Since 28 January 2009, the company has held a license for textile products deriving from WWE for 2009 and 2010 covering WWE clothing (t-shirts, sweat shirts, pants, etc.) and WWE accessorises (caps, hats, gloves, etc.) (*exhibit No. 2*).

In order to obtain the licence for Portugal, the company J.F. Ramos accepted to pay a Minimum Guarantee of **17,500 US$** (equal to 12,929.10€) over two years to the company WWE in two annual payments of 8,750 US$ each made to the company CPLG, an WWE agent, on behalf of the latter (*see exhibits Nos. 2, 17 and 18*).

The company J.F. Ramos also makes payments to WWE's European licensee, the company CPLG, at the royalty rate of 12% of the realised sales on behalf of WWE, and which is on top of the paid guarantee (*see contract, exhibit No. 2, statement of royalty payments, exhibit No. 16 and proof of payment for 2009, exhibit No. 18*).

WWE's licensing revenues for several European countries are managed entirely and directly by the licensing agent, CPLG, (*exhibit No. 32*) who received the royalty declarations from the company J.F. Ramos on behalf of WWE and manages the payment of royalties and the minimum guarantee due in its account (*see pages 18 and 19 of the license contract between the company J.F. Ramos and WWE, exhibit No. 2, the invoice sent by the agent CPLG to the licensed agent J.F. Ramos, exhibit No. 2 and the wire transfer order made by J.F. Ramos in the name of the agent CPLG, exhibit No. 18*)).

**To date, the company J.F. Ramos has never been questioned by the company WWE or any other company concerning WWE Merchandise (*see statement of J.F. Ramos' legal representative, exhibit No. 19*).**

The relationship between the company J.F. Ramos and WWE has always been excellent, until this case, as the company J.F. Ramos has always acted as an exemplary licensee.

The company J.F. Ramos submits his application for WWE merchandise in due time, pays the invoices sent to it, declares its sales each trimester and pays 12% royalties of its realised sales (based on the price without tax) to WWE through the intermediary CPLG.

16

For the year 2009, the company J.F. Ramos thus paid close to 40,000 US$ to the company CPLG on behalf of WWE, between the first portion of the minimum guarantee and the royalties due for the sale of official WWE products (*exhibits Nos. 16, 17 and 18*).

The royalties paid by the company J.F. Ramos to the company CPLG on behalf of WWE for the year 2009 covers specifically the disputed WWE Products officially licensed, which were sold by the company J.F. Ramos to the company Sun City.

Thus, regarding the Products accused of being counterfeit by the company WWE:

1)   The company J.F. Ramos has received approval from the company WWE for the referenced official licensed WWE Products (*exhibit No. 14*),

2)   The same referenced official licensed WWE Products approved by WWE were afterwards sold by the company J.F. Ramos to the company Sun City, according to the invoices presented by J.F. Ramos which makes clear that they are the same references (*exhibit No. 15*),

3)   The sales of these Official Licensed WWE Products have thus been declared at the end of 2009 by the company J.F. Ramos to WWE and its agent CPLG in a declaration of royalties bearing the same Product references (*exhibit No. 16*),

4)   The payment of 33,006.92 US$, corresponding to the royalties dues minus the first portion of the Minimum Guarantee due, was thereafter made by the company J.F. Ramos to the company CPLG on behalf of the company WWE (*exhibit No. 18*).

**The company WWE has thus received the royalty payments for the Official Products bought by the company Sun City and sold by the latter to its French supermarket customers, where after the company itself later describes its Official Products as counterfeit, accusing the company Sun City in front of its customers of unlawful actions after the Products had been sold in France (*exhibits Nos. 10, 22, 23, 24, 25, 26, 27 and 31*).**

**1.2    Presentation of the Plaintiff, the Company Sun City (Cie DND)**

The company Sun City-CIE DND ("Sun City") is French Importer of Official Licensed WWE Textile Products sold by J.F. Ramos.

The French company Sun City (*see K-Bis of Sun City, exhibit No. 4*), with an annual turnover of between 50 and 60 million Euro in 2008 and 2009 (exhibit ), is known for its specialisation in the importation, sale and distribution of derivative textile products, which it has supplied mostly to the large French supermarkets (E.Leclerc, Agora, Kiabi, Carrefour, Cora, etc.) for several years. Among the licensed products that it sells are those of the famous mark Snoopy, whose rights are

managed by the licensing agent CPLG, who also happens to be the licensing agent for the company WWE.

During 2008, Sun City's supermarket customers, a market representing for the latter a turnover of several million euros per year, made known that they were actively looking for WWE products to put on the market in 2009 and 2010 in France.

Wishing to take advantage of this favourable booming market, the company Sun City thus contacted the company WWE and its agent CPLG to obtain a license contract for the WWE textile products for the years 2009 and 2010 in France.

During the negotiations handled by the intermediary CPLG, Sun City offered the company WWE to transfer the minimum guarantee in the immense amount of 80,000€, as well as 12% royalty on all realised sales.

After long negotiations, the company Sun City was denied the license by the company WWE and, finally, the rights to WWE textile products on the French territory were granted to the German company TVMania GmbH and its French and German partners Lamaloli GmbH, Scemama SNC and Scemama International SARL (see the extracts of the internet site of TVMania GmbH, exhibit No. 3, the extracts of the internet sites www.lamaloli.fr and www.lamaloli.com, exhibit No. 6, the catalogue of WWE products and the sales conditions, exhibit No. 7, the extract of the site of the Textile Path, exhibit No. 21 and the advertisement published in the Journal du Textile on 9 February 2010, exhibit No. 33).

Following this catastrophic refusal, the company Sun City did not have any other choice but to seek a licensee approved by WWE within the European Union for the WWE textile products to satisfy its supermarket customers.

This situation was clearly less advantageous for the company Sun City since its profit margin would be correspondingly reduced by the purchase price of the Official Products from the WWE licensed agents, but this allowed it at least to remain an active agent on the important market by responding to the demands of its customers, notably supermarkets.

The company Sun City's intensive search within the European Union resulted in the finding of the company J.F. Ramos, a Portuguese supplier of licensed official WWE textile Products. The company J.F. Ramos possessed the ability to offer the customers of the company Sun City a broad range of products, in sufficient quantities, at an attractive price and on conditions satisfactory for the company Sun City and in full compliance with the company WWE's rights since J.F. Ramos possessed a license contract for its Official textile Products (exhibit No. 2).

The companies Sun City and J.F. Ramos made an agreement and the company J.F. Ramos started to sell official licensed textile Products to Sun City, approved by the company WWE and for which J.F. Ramos paid royalties to the company WWE (see exhibits Nos. 14, 15, 16, 17 and 18).

18

Thereafter, the company Sun City sold the Official Licensed Products to its own supermarket customers, like the companies Carrefour, Kiabi, Galec (central purchasing group for the company E.Leclerc), Agora and Vetura.

The sales realised by the company Sun City to its customers were thus perfectly legal since by virtue of the free movement of goods and the freedom of trade within the European Union, it had the right to purchase **official WWE Products in Portugal from a European licensee of WWE to sell to its own French customers.**

However, thereafter, the company Sun City found itself completely discredited vis-à-vis its customers, the latter having received registered official letters with warning notices from the company WWE who accused Sun City of selling counterfeit WWE Products and threatened them with proceedings.

The company Sun City, weakened by these attacks and by the incessant demands by its customers on this subject, then discovered that these actions had no other purpose than to better the position of the German and French partners of the company WWE, its licensee TVMania and their partners Lamaloli GmbH, Scemama SNC and Scemama International SARL.

In fact, it has been confidentially informed by one of its customers, who had received a warning notice, that the companies had contacted him/her in order to sell WWE products identical to those accused of being counterfeit at higher prices.

The goal for these companies, accomplices in the act of diverting customers, unfair competition and of damaging the reputation of the company Sun City, was thus clear: to steal the company Sun City's customers by accusing the latter of deceitful acts of counterfeiting, as well as by way of mouth-to-mouth, which on such a market would ruin the image and reputation of Sun City without the company WWE having to go to court, which any honest person would have done straight away.

The complicity of the company WWE, its licensee and their partners is explained by the fact that the royalties paid by the four companies in illicit agreement with WWE are of greater size than those paid by the company J.F. Ramos, who gives lower prices than the companies Lamaloli GmbH, Scemama SNC and Scemama International SARL for the same Products (*see comparative table, exhibit No. 35*).

In fact, the royalties collected by WWE are about 12% of the sales realised by its licensees. The higher the prices of the licensees, the higher the royalties paid to WWE. WWE's pecuniary interests are thus clear.

**The goal of the company WWE, its licensee TVMania and their partners Lamaloli GmbH, Scemama SNC and Scemama International SARL are thus very clear: to partition the market in order to collect higher royalties and commissions, respectively, for the former and to**

**eradicate all competition for the latter in order to permit them to sell the same WWE merchandise for higher prices and profit margins.**

These companies wish to illegally eradicate all competition and to partition completely the market for official WWE Products in France, causing extreme damage to the company Sun City, and do so using unlawful and fraudulent actions to eliminate it from the market.

The Plaintiff thus solicits the Court to put an end to these unlawful actions and to order compensation for serious material and moral harm done to the company Sun City by the Defendants, the companies TVMania GmbH, Lamaloli GmbH, Scemama SNC, Scemama International and WWE.

## 2.     Circumstances of the Litigation and the Proceeding

By selling the same types of official WWE textile products to the same network of French supermarkets, the companies Lamaloli GmbH, Scemama SNC and Scemama International SARL are in direct competition with the company Sun City, who was forced to get hold of official licensed WWE Products from the company J.F. Ramos, itself a official licensee of WWE (*exhibit No. 2*).

This situation of healthy and normal competition might have continued as each of the parties had customers and as competition is the law of the market.

However, the presence of the company Sun City on it was apparently not liked by the companies TVMania GmbH, Scemama SNC, Scemama International SARL, Lamaloli GmbH and WWE since everything has been done by them to oust the company Sun City from its supermarket customers, making it lose turnover amounting to several million euro and causing serious injury by discrediting it to its customers.

The company WWE, its licensee TVMania and their different German and French partners have actually organised **a very elaborate and controversial system of surveillance** of major outlets for WWE products in order to establish the origin of each article of WWE and to react fast in the encounter of other companies who dare legally integrate themselves on the market for WWE products.

In fact, WWE has mandated its licensee and partners to denounce all third parties who sell WWE products without a direct agreement with WWE, going against the free movement of goods within the European Union.

It is to do this that the agents and partners, who are accomplices of WWE, have paid visits to the large supermarkets and have taken photographs of all WWE Products, including labels, in order to determine their origin.

20

It is in this way that the official Portuguese licensee J.F. Ramos has received by email, in November 2009, photographs of official WWE products sold in a French store of the chain E.Leclerc, asking him to account therefore (*exhibit No. 34*).

Above each photograph is the phrase "**WWE cross-boarding**" which shows that these photographs constitutes a file of "**control of parallel sales of WWE**" in relation to the sale of official derivative products by a licensee considered to be made outside his jurisdiction.



*Copy of one of the photographs taken by WWE's accomplices in the store E.Leclerc in Touques, France, which was sent with the email to CPLG Portugal, on which the words "WWE cross boarding" clearly appears in the upper left corner, exhibit No. 34*

The control exercised by WWE, its agents and its partners on the sale of official WWE Products is therefore obvious.

Hence, the control is unlawful as it aims to establish artificial borders between the territories and the countries in the European Union where the goods can circulate freely.

Therefore, once WWE, its agent TVMania and their partners received confirmation from the bar codes found on the photographed Products that these were indeed official WWE Products sold by J.F. Ramos to Sun City, the companies TVMania GmbH, Scemama SNC, Scemama International SARL, Lamaloli GmbH and WWE agreed to make Sun City's customers believe that the official licensed WWE products sold to them by the latter were "**counterfeit**".

Sun City's customers who received warning notices and were threatened with proceedings thus froze all their orders of WWE Products made to Sun City (*see especially exhibits Kos. 24 and 25*).

"Conveniently" informed of the situation and the strong demand for WWE products to customers of Sun City, WWE and its partners only had to contact Sun City's customers directly and offer them the same official WWE products, approved by WWE, at elevated prices and profit margins.

Hence, the official Products sold by Sun City to its French customers were purchased from WWE's official Portuguese licensee, the company J.F. Ramos, as shows the indisputable evidence presented in the case (*see exhibits Nos. 14, 15, 16, 17 and 18*).

**Furthermore, WWE's false accusations have never been the object of legal action regarding counterfeiting** (*exhibit No. 19*), while anyone in good faith would have gone to court to enforce its rights.

The only goal of the agreement between the companies Scemama SNC, Scemama International SARL, Lamaloli GmbH, TVMania GmbH, and WWE was thus to <u>destroy the trust between the supermarkets and their supplier Sun City</u>, a ploy that unfortunately worked extremely well, as at this time, the orders for Official Licensed WWE Products made to the company Sun City by its customers have <u>stopped</u> (*especially exhibits Nos. 24 and 25*).

In fact, several of the company Sun City's customers have totally frozen their orders, including those in progress, and have made it clear that from now on, the company Sun City must supply multiple proofs of rights on each product that it sells, which considerably slows the transactions, which between professionals are usually very fast as the markets reactivity is an essential rule.

The supermarket's' fear is explained by the threats that they have received from the company WWE (*see especially exhibits Nos. 25 and 26*).

<u>On 7 December 2009</u>, the board of directors in WWE gave notice to Sun City accusing it of selling counterfeit products of several community trademarks held by the company WWE ("W", No. 002732477, registered on 20 July 2004, "WORLD WRESTLING ENTERTAINMENT" No. 002731495, registered on 10 February 2004, "REY MYSTERIO" No. 003124435 registered on 13

September 2009 and "UNDERTAKER" No. 003124294 registered on 20 October 2005) covering, among other, class 25 corresponding to clothing (*exhibit No. 10*).

In this formal letter, the board of directors in WWE stated that the clothes sold by the company Sun City bearing the previously mentioned trademarks, "**have not been put on the market by the company World Wrestling Entertainment Inc nor with its consent**" (*see page 2 of the warning notice letter, exhibit No. 10*).

Further, the same company required that the company Sun City committed itself "*in writing to stop all sales of articles bearing the marks of our client and to no longer infringe the rights of the company World Wrestling Entertainment Inc., accordingly, (…) to no longer purchase, distribute, offer to sell and sell the products bearing the marks of our client **since the products are not produced and sold by the company World Wrestling Entertainment Inc. or its licensees**" (page 2 and 3 of the warning letter, exhibit No.10).

Forthwith, **on 9 December 2009**, the company Sun City responded to the board of directors in WWE informing it that the products it was selling were not counterfeit for the good and simple reason that the products were purchased directly from an official licensee of WWE, the Portuguese company J.F. Ramos (*exhibit No. 11*).

In fact, the disputed products were purchased by the company Sun City from the company J.F. Ramos, an official licensee of the company WWE (*see the license contract between the companies J.F. Ramos and WWE, exhibit No. 2*).

At the same time, the copy of the letter was sent to the company J.F. Ramos by the company Sun City so that the company J.F. Ramos could contact WWE directly to settle this matter (*exhibit No. 12*).

The company J.F. Ramos, extremely embarrassed by the repercussions to its client Sun City, immediately contacted the company WWE to demand an explanation reminding WWE that it had paid on a regular basis the royalties for all realised sales of WWE textile products, including those made to the company Sun City, the object of this case (*exhibit No. 13*).

However, despite having received the response from the company Sun City which completely clarified the situation and did not leave any doubt of the fact that the products it had sold to its French customers were official WWE products approved by WWE itself, the latter have tried to destroy Sun City's market by sending warning notices, for some on the same day, to Sun City's most important customers (*exhibits Nos. 22, 23, 24, 25 and 26*).

The company WWE then contacted the supermarkets who sold the official disputed products and informed them that the products were counterfeit and threatened them with proceedings.

The consequences of WWE's lies and dilatory accusations have been doubly heavy for the company Sun City.

On the one hand, immediately following the receipt of the warning notices sent by WWE accusing the products sold by Sun City of being counterfeits, Sun City's customers contacted it immediately to inform that as of that moment all orders past and present were frozen (*see especially exhibits nos. 24 and 25*).

The company Sun City has thus lost considerable time explaining to each customer that the products sold were indeed official WWE products and not counterfeits. Naturally, none of its clients took the word of the director of the company Sun City, fearing the threats of proceedings made by WWE.

Sun City had to contact its official supplier, the company J.F. Ramos, and ask that it send all documents justifying the proper licensing rights. Thereafter, a researching task was necessary to assemble all invoices for purchases of Products from Sun City (*exhibit No. 15*).

Attempting to hold on to its customers warned by WWE, the company Sun City has had to use the power of persuasion and it is only because the company Sun City has always been irreproachable that its customers have consented to freeze the orders while waiting for justifications, instead of simply cancelling them (*exhibit No. 24*).

On the other hand, the activities between Sun City and its supermarket customers have definitively slowed, as henceforth it must justify all rights attached to each sale, which constitutes a real and serious nuisance in a reactive market where transactions need to be fast and non formal and fastidious (*exhibits Nos. 22 and 23*).

So, **on 7 December 2009**, the company Vetura SA, a customer of the company Sun City, received a warning notice from the board of directors in WWE. The subject of the letter was "*sale of counterfeit products of the marks held by the company World Wrestling Entertainment Inc*" (*exhibit No. 26*).

**On 9 December 2009**, the company Agora, a very important actor on the supermarket market (including the famous brand Gigastore), demanded a number of documents in order to continue its business with Sun City, following the warning notice sent by WWE received by Agora on 8 December 2009 (*exhibit No. 23*).

This demand of proof covered all products licensed to sale by Sun City to Agora: Agora's confidence towards the company Sun City has thus been completely broken by the dilatory and false warning notice sent by WWE and the economic and moral consequences for the company Sun City are catastrophic.

The sale company Agora also insisted that Sun City provided it with "*a letter taking full responsibility for the products delivered in 2009*" (*exhibit No. 9*).

At the same time, **on 10 December 2009**, the purchasing centre of the famous distributor E.Leclerc announced to the company Sun City its hesitation to maintain its WWE products for the winter 2010, "*in view of the turn of events between your company and WWE*" (*exhibit No. 24*).

This was confirmed by a registered official letter from the company E.Leclerc to the company Sun City on 14 December 2009 (*exhibit No. 25*).

Further, **on 23 December 2009**, the company KIABI, one of Sun City's principal customers demanded of the latter to furnish it with a copy of its contract with WWE "*having concerns about the h09 (the 2009 winter collection) with the licensed agent (WWE)*" (*exhibit No. 22*).

**Thus, the company WWE and its French partners knew from June 2009 that the WWE Products sold by the company Sun City were official Products from J.F. Ramos and approved by WWE.**

In fact, **on 24 June 2009**, the company WWE, via its instrumental agent, informed the Sales Manager of the company KIABI that it had learned **from its licensee TVMania** that KIABI was looking to purchase WWE products from the company CIE-DND (Sun City) (*exhibit No. 31*).

This email indicated that "*considering that Cie DND does not hold a license for the French market, we need to identify the licensee from which it supplies itself and need to verify that the models offered to your are approved and that the licensee in question have applied to the copyright owner (WWE) to request permission to export through a third party holder*" (*exhibit No. 31*).

Thus, WWE willingly started the trouble in the relationship between the company Sun City and its customer Kiabi by the bias of TVMania and its French partners.

Thus, all the products sold by the company Sun City were approved by the company WWE itself.

**These actions, purely dilatory and deceptive, constitute acts of complicity in unfair competition and unlawful partitioning of the market for the purpose of promoting the French companies Scemama SNC, Scemama International SARL, and the German companies TVMania GmbH and Lamaloli GmbH to the detriment of Sun City, illegally depriving the latter of a considerable turnover and ruining its reputation and its image in front of its customers.**

**On 27 July 2009**, the International Sales Director of WWE sent an email to Mr. Benchetrit, manager of the company Sun City, in order to obtain information on Sun City's sales of WWE products (*exhibit No. 27*).

In this email, WWE states that they are giving the company Sun City the benefit of the doubt and *"assume that the products presented to you as being official licensed products, and in that case, I presume that your see no objection in giving me the name of your supplier"* (exhibit No. 27).

**On 30 July 2009**, even though he was on vacation, Mr. Benchetrit responded immediately to WWE explaining that over the course of the last 25 years, he had never purchased counterfeit products and that the disputed products were actually official WWE products bought from an official licensee of WWE (exhibit No. 28).

Mr. Benchetrit also emphasised to WWE that the company Sun City remained open for any license agreement with WWE, which would make it possible to avoid the purchase costs for the WWE products bought from an official intermediary licensee, costs which rather reduced the profit margin of the company Sun City.

More importantly, the company WWE responded to these clarifications on **23 September 2009**, after long vacations, by saying *"appreciate your quick response and what it contains"* (exhibit No. 29).

**Thus, the matter should have been settle then**, as WWE knew that the company Sun City was not a counterfeiter and that it had purchased the official WWE products from a licensee approved by WWE which it was selling to its own French customers, in accordance with Community law and the principle of free trade in the European Union.

Thus, the company Sun City was very surprised when panic took hold of its customers following the receipt of the warning notices sent by the company WWE (exhibit No. 10).

**On 23 December 2009**, the company Sun City sent a final email to the company WWE in order to reach an amicable agreement to settle the catastrophic situation (exhibit No. 30).

Sun City informed in particular WWE that it was aware that a licensed third party, a partner of WWE, which had "conveniently" become aware of the warning notices sent by the company WWE, had profited from the situation by contacting directly the company Sun City's customers (exhibit No. 30).

It therefore seemed clear to the company Sun City that the sending of the dilatory warning notices by the company WWE had but one goal: to create panic among Sun City's customers, to block all its orders, to freeze its activities and to have its European partners TVMania, Lamaloli, Scemama and Scemama International profit from the situation.

**The company WWE and its licensee TVMania have clearly set up at system of partitioning the market for WWE Products in France, which was only possible with the help of its partners Lamaloli, Scemama and Scemama International.**

A surveillance system of WWE products in France exists (*exhibit No. 34*), organised and managed by the European partners of WWE which allows WWE and its accomplices to partition the market, which the report from the Bailiff requested by this will no doubt confirm, in addition to elements already in evidence.

The company Sun City has been forced to file this Petition with the President of the Commercial Court in Paris in order to be able to protect the evidence of the serious acts committed by the companies TVMania, Scemama SNC, Scemama International SARL, Lamaloli GmbH and WWE and to stop this unlawful agreement, which is very organised and very difficult to unmask.

## II.    Discussion

### 2.1.    The Defendants are in Agreement to Remove the Company Sun City from the Market and to Divert Its Customers

### 2.1.1    The Company WWE has unlawfully Partitioned the French and European market for WWE textile Products and thereby Violated French and Community Competition Law

It is clearly prohibited under Community law, as under French law, notably in Article L.420-1 of the Commercial Code, to make an absolute territorial partition and to prohibit sales outside the territory conceded to buyers who seek the distributor directly (called "passive" sales).

The French Competition Authority's decision No. 2000-D-08 of 4 April 2000 outlines the general principle:

> "*A supplier using a network of distributors to which it grants exclusive territories could not lawfully prohibit these distributors from responding to requests from customers located in other geographic zones than those covered by the exclusivity **since they do not conduct an active sales policy outside the territory they have been granted**".*

Yet, here, the company J.F. Ramos, official Portuguese distributor of WWE textile products purchased by the Plaintiff, never contacted nor implemented any active sales policy in respect of the latter. It is the company Sun City, wishing to meet the demand of its own French customers, who has contacted the distributor J.F. Ramos to obtain official WWE products in order to sell them in France.

Thus, the company WWE could not prohibit its Portuguese distributor form selling WWE products to the Plaintiff **at the request of the latter** without violating the French and Community law on free competition.

Moreover, the Community exemption Regulation No. 2790/99 (JOCE L 336 of 29 December 1999, page 21) and the European Commission's guidelines for interpretation (JOCE C 291 of 13 October

2000) contains the list of contract provisions considered as being unacceptable under Community law in terms of agreements or concerted vertical practices.

The exemption Regulation applies to all agreements or concerted vertical practices entered into between companies who are not situated on the same level in the production or distribution chain.

Then, the exemption regulation applies to the agreements and concerted practices implemented between WWE, as granter of licenses, and its co-defendants, distributors of WWE textile products in France and Europe.

Further, WWE's market share will exceed by 30%, given it has full exclusivity of the rights to the WWE products.

The Regulation lists the terms "black", prohibited in the contracts.

Thus, the suppliers cannot impose a resale price on its distributor, which means that **it is forbidden for suppliers to fix the buyer's profit margin**.

Yet, this is exactly what the company WWE has done; it tries to ensure an obligatory minimum amount of royalties by unlawfully controlling the prices at which the WWE textile products are sold.

The Competition Authority has deemed that this was:

> "*contrary to Article L.420-1 of the Commercial Code and not subject to the exemption clause which prohibited distributors from the sale of products relating to other distributors, in the context of a network that does not fall within selective distribution*"(**Decision No. 06-D-37 of 7 December 2006**).

Moreover, **the combination of several types of territorial restrictions and eligible customer isolation can have restrictive effects on excessive competition and be contrary to Article L.420-1 of the Commercial Code** (Decision No. 04-D-67 of 1 December 2004).

In this case, in a context where WWE's market share for its textile products exceeds 30%, the combination of the restrictions imposed by WWE on J.F. Ramos regarding its customers and the territorial exclusivity that it seeks to impose are likely to result in competition restrictions between the distributors of the WWE textile products, contrary to Article L. 420-1 of the Commercial Code.

The company WWE in cooperation with and with the complicity of the co-Defendants, are thus all guilty, in their concerted anticompetitive practices, of unlawfully partitioning the French and European market, of improper and malicious surveillance of the sale of WWE textile products in France and internationally, of diverting customers through false accusations of counterfeiting to the customers of the plaintiff, and then making contact for the purpose of selling the same WWE textile products at higher prices.

These unlawful actions have caused the company Sun City considerable damage, in particular the loss of all orders for WWE products both concerning orders already made for the summer 2010 (January – June 2010) (see especially *exhibit No. 36*) and for orders regarding this winter 2010 (July – December 2010) and the winter of 2009( July – December 2009).

### 2.1.2   The company WWE and the co-defendants have eliminated the Company Sun City from the French and Community Market in order to ensure higher Sales and Royalty profits, thereby violating the Community and French provisions Prohibiting tariff restrictions and related practices

Article 4 a) of Regulation No. 2790/99 qualify as characterized restriction "*the restriction or the ability of the distributor to fix his sales price, without prejudice of the possibility for the supplier to impose a maximal sales price or to recommend a sales price, provided that the latter does not constitute a fixed or minimum sales price made under pressure from one of the parties or the incentive measures taken by these*".

**The supplier shall not pressure the distributors or take measures against the distributors in order to fix the prices** (*Decision No. 07-D-35 of 7 November 2007*).

Moreover, the Competition Council has decided that merely potential competition between a certain number (even very few) of outlets was sufficient for the breach to be accomplished (*Decision No. 00-D-10 of 11 April 2000*).

Thus, in this case, the competition between the distributors of WWE and the company Sun City, the Plaintiff, more than qualify: the companies Scemama SNC, Scemama International SARL, Lamaloli and TVMania have the same supermarket customers as Sun City (*see the list of TVMania's French customers on its internet site, exhibit No.3*).

In addition, the companies have carried out a surveillance of the sales of WWE textile products in the supermarkets, like Auchan, on behalf thereof.

Thus, the email of 24 June 2009 from WWE's agent to the company Kiabi shows that the co-defendants knew the company Sun City was going to supply the company Kiabi with WWE textile products (*exhibit No. 31*).

Even more damning, the email from WWE's Portuguese agent sent to the company J.F. Ramos along with photographs of WWE products taken in the supermarket E.Leclerc in Touques, France, bearing on the upper left side the words "WWE cross boarding", showing without a doubt the surveillance of parallel sales and the strict control of the market by the co-defendants (*exhibit No. 34*).

These elements show without any ambiguity that the co-defendants have agreed to control the market, to fix the sales prices for the WWE products by eliminating all sellers not directly part of their network, and all this unlawfully, not hesitating to resort to unfair and dilatory actions, accusing the company Sun City of being a counterfeiter even though they knew perfectly well that this was not the case and that WWE had itself approved and received royalties for the products sold by WWE.

The damages suffered by the company Sun City, both material, caused by the halt of all orders made by its customers, and moral, caused by the damaging of its reputation, the complete rupture of its customers' confidence with the consequences which this can have concerning its activities, are thus considerable and should be compensated.

### 2.1.3   The company WWE and the co-defendants have, unfairly through denigration, eliminated the company Sun City from the French and Community market by falsely accusing the company Sun City of selling alleged counterfeit WWE products that it lawfully purchased from the official WWE licensee, J.F. Ramos

In addition to their actions aimed at partitioning the market and eliminating the company Sun City from the French and Community market, the Defendants have put in place a strategy of denigration of the company Sun City constituting unfair competition.

According to Article L120-1 of the Consumer Code:

*"Unfair commercial practices are prohibited. A commercial practise is unfair when it is contrary to the standards for professional diligence and when it distorts, or might distort in a significant way, the financial situation of a reasonably well informed, attentive and sensible consumer towards a good or a service."*

Unfair competition is a manifestation of civil liability punishable by the Articles 1382 and 1383 of the Civil Code.

Denigration constituting unfair competition is to discredit the company, the personality, the products, a competitor's prices. "To denigrate", according to the Emile Littré dictionary, means "*to strive to by way of speech to blacken, meaning to erase the good opinion that others have of someone or to depreciate the quality of something*". In any case, the judge is not required to investigate whether the assessment of the merits of the products or the companies in question is or is not correct (Cass. Com., 19 July 1973: D. 1973, p. 558).

The criticism, comments, remarks, mockeries, tiredness, in other words these denigrations are not condemnable under unfair competition when they are not part of a competitive relationship.

It is different, as in this case, when the criticism comes from a competitor even if it is moderate (Cass. com., 21 February 1967: Bull. Civ. 1967, III, No. 82).

The most common target of denigration is to criticize the competitions products by focusing on their alleged poor performance or quality or on the potential dangers of their use. Jurisprudence is filled with examples of this type of unjustified criticism; and it is important to note that the act of unfair competition will be established even if the criticism turns out to be accurate. Therefore, he who criticizes the rival product will be convicted of unfair competition (Cass. com., 15 May 1997).

In this case, the company WWE and the co-defendants have put in place an unfair and malicious surveillance of the sales of WWE textile products in France and internationally, and have succeeded in diverting Sun City's customers through false accusations of counterfeiting to the clients of the plaintiff and thereafter by making contact for the purpose of selling them the same textile WWE products at higher prices.

In fact, WWE, TVMania GmbH and their German partner (Lamaloli) and French partners (Scemama and Scemama International) have not hesitated to spread false information to clients of competing companies damaging their credibility and reputation in order to divert their customers (see exhibits nos. 22-26).

The company WWE, its licensee TVMania and their different European partners have in this way been able to partition the market for licensed WWE products ensuring unlawful exclusivity on the sale of official WWE products in a given territory or country. Consequently, WWE have received higher royalties and its accomplices have been able to eliminate their competitions like Sun City from the market for WWE merchandise in order to sell the same products at much higher prices and profits.

These various manipulations have thereby permitted the company WWE, its licensee TVMania GmbH and their European accomplices to completely block the orders for WWE products made to their competitors like the company Sun City, the French company that purchased official WWE products from WWE's Portuguese licensee J.F. Ramos.

**In December 2009, Sun City's various customers received warning notices from the company WWE (exhibits nos. 22, 23, 24, 25 and 26) accusing Sun City of having sold them counterfeit WWE products, even though WWE and its agent had known perfectly well the entirely legal origin of said products since June 2009 (exhibits nos. 27, 28, 29, 31 and 34).**

The consequence of these actions constituting character denigration has been direct and immediate: several of Sun City's customers have immediately frozen their orders (see, among others, the exhibits nos. 24 and 25). WWE, its licensee TVMania and its partners thereby oblige the importers like the company Sun City who has been completely discredited to stop supplying their customers who threatened with infringement proceedings have lost confidence completely.

**However, the products sold by Sun City were Official WWE products purchased from J.F. Ramos, a licensee of WWE. The Products in question were approved by WWE and J.F. Ramos has paid royalties to WWE for each sale of these products to Sun City which**

31

**confirms the legality of these products** (*see invoices made out by J.F. Ramos to Sun City; exhibit No. 15, the approval by WWE of the same WWE Products sold by J.F. Ramos to Sun City, exhibit No. 14, the declaration of corresponding royalties made to WWE, exhibit no. 16 and the proof of payment of royalties by J.F. Ramos to WWE, exhibit No. 18*).

These actions constitute denigrations characterising the strategy of unfair competition put in place by the Defendants pursuant to Article L120-1 of the Consumer Code of which compensation will be sought.

### 2.2 For the Damage Suffered by the company Sun City due to the Unlawful Acts of the Defendants

### 2.2.1 For the Serious Material Damage Inflicted on the Company Sun City by the Defendants

The company Sun City has always had excellent relations with its clients, notably the large supermarkets like the companies Auchan, Carrefour, E.Leclerc, Agora and Kiabi.

Through years without problems, it has succeeded in gaining the confidence of its demanding customers, who ordered derivative products in very large quantities, which gave a significant turnover.

**On 16 November 1009,** the company Agora, who manages the well-known chain "Gigastore", made an order of more than 802,517€ of WWE textile products for the 2010 summer collection (January - June 2010) (*see exhibit No. 36*).

Thus, this company received a warning notice by the defendant WWE **on 8 December 2009** (*exhibit No. 23*).

**On 9 December 2009,** the company Agora immediately contacted the company Sun City in response to the dilatory and malicious warning notice sent by WWE, and asked for numerous pieces of evidence relating to the products sold by the plaintiff. This demand for documentation covered all the licensed products sold by the company Sun City to Agora: the confidence between the two companies is thus definitively broken due to the false accusations made by the company WWE.

The same company furthermore demanded that the plaintiff provided it with a letter "*taking full responsibility for the products delivered in 2009*" (see exhibit No. 9).

Thereafter, the company Agora froze all its orders made to the company Sun City and has made no new orders, thus ending all relations with the plaintiff, to which represented a mere 9.32% of Sun City's turnover.

The orders for WWE products made by Agora and later cancelled due to the malicious actions of the defendants amounted to 802,517€ (see order, exhibit No. 36).

This order of 802,517€ did not concern the summer 2010 collection. Its cancellation thus constitutes a significant part of the losses suffered by the company Sun City.

Moreover, this order would have been renewed for the winter 2010 collection (July – December 2010), which constitutes another loss of 802,517€.

Thus, regarding the company Agora alone, the material damage caused to the company Sun City is estimated at 1,605,034€, corresponding to 9.32% of Sun City's turnover.

**The total turnover lost by the company Sun City due to the evil acts of the defendants is thus estimated at more than 17,000,000€, as detailed in the chart below:**

**Losses suffered the company Sun City's turnover for WWE textile products due to the unlawful and unfair actions of the defendants**

| | | | |
|---|---|---|---|
| AGORA | | 1 605 034 € | 9,32% |
| AUCHAN | | 906 700 € | 5,26% |
| CARREFOUR | | 1 243 229 € | 7,22% |
| CORA | | 626 769 € | 3,64% |
| HAV-HAC | | 436 539 € | 2,53% |
| CASINO | | 428 137 € | 2,49% |
| KIABI | | 437 543 € | 2,54% |
| LECLERC GALEC | | 857 247 € | 4,98% |
| SYSTEME U | | 285 927 € | 1,66% |
| DIVERS (multimarques & grossistes & autres clients ) | | 10 394 505 € | 60,36% |
| TOTAL | | | 100,00% |

Thus, in 2010, the company Sun City has suffered a loss of 17,221,400€ which should be compensated. The defendants will therefore be jointly and severally ordered to pay this provisional amount which has been lost due to their fraudulent and evil actions.

Moreover, this amount does not cover the orders lost for the year 2010 (summer 2010 and winter 2010) and shall therefore be added the amount of 115,974€, corresponding to the turnover lost in relation to not sold remaining stock of WWE textile products at the end of 2009 and covering the winter 2009.

### 2.2.2    For the Moral Damage and Damage to the Image inflicted on the Company Sun City by the Defendants

Due to the Defendants false actions, and also the heavy material damage inflicted on it, the company Sun City has undeniably suffered significant moral damage, as the confidence that it had spent years building with its clients, especially the more difficult French supermarkets (Auchan, Agora, Carrefour, Kiabi), has been completely broken due to the false accusations of the company WWE and its cleverly orchestrated actions of its accomplices (*see in particular exhibits Nos. 22, 23, 24, 25*)

Thus, the company WWE knew from 24 June 2009 that the company Sun City was intending to sell WWE textile products in France which it had purchased from the Portuguese company J.F. Ramos.

In fact, in an email of this date, it attempted through its agent to dissuade the company Kiabi from purchasing WWE products from the company Sun City, voluntarily commencing the troubles in the relationship between the company Sun City and its customer Kiabi instead of contacting Sun City directly (*exhibit Nos. 31*).

Thereafter, during the summer of 2009, the direct contact between the companies WWE and Sun City was established and the situation was entirely clear between the two companies (*exhibits Nos. 27, 28 and 29*).

Thus, its is maliciously and with the aim of diverting the customers of Sun City that the company WWE and its accomplices have put in place a strategy of denigration and of false accusations against the company Sun City, declaring to its customers that it had sold them counterfeits and warning them in order to create a crisis situation between them (*exhibits Nos. 22, 23, 24, 25, 26*).

The Court will note that the threats and warning notices sent to the company Sun City and its customers have never been followed by legal proceedings against the company J.F. Ramos, which shows that they had an entirely malicious and unfair purpose and that that they were unfounded.

These artificial threats have in fact obtained their only purpose: to cause the company Sun City to lose the confidence of its supermarket customers in particular in order to thereafter recover these cautious customers.

The company WWE, with the help of its accomplices, the co-defendants TVMania, Lamaloli, Scemama and Scemama International, has thus unfairly used the warning letters to oust the company Sun City, thereby causing the same immense moral damage. More than 25 years of confidence with certain of its clients have thus been swept away by the co-defendants fraudulent actions.

Consequently, the Court must convict the co-defendants jointly and severally to pay the amount of 500,000€ due to the moral damage and damage to the image suffered by Sun City.

### 2.3    For the Nullity and the Invalidity of the Trademarks Owned by the Company World Wrestling Entertainment, Inc. Automatically Filed

The Court of First Instance for the European Community (TPCE) noted in its ruling of 8 July 2008 to "*Lancôme Perfume and Cosmetics / OHIM and CMS logo*" that the trademark is a mark "*serving to distinguish the products and the services to guarantee to the consumer the identity of the origin of the product*".

Thus, the TPCE determined that it was not permissible for a trademark owner to monopolise the unexploited terms in the course of trade, for which reason any party able to sue can seek the cancellation of a Community Trademark without having to show his own interest in acting.

In this case, the company WWE has registered no less than **291 Community Trademarks**, which figure is ever-increasing as **around 20 "new" Community Trademarks have been filed by WWE since 1 January 2010**.

The nullity of each of these 291 trademarks, as presented in the chart below for the sake of clarity, is sought, as each of these trademarks are void in accordance with the Rules on Community Trademarks No. 40/94 of the Council of 20 December 1993, either because the sign filed by WWE is not absolutely distinctive, or because the registered trademark has not been used by WWE during the last five years and it has thereby expired.

In fact, WWE has filed a considerable number of Community Trademarks corresponding to the names of wrestlers, even though this does not indicate the origin of the product, since all the names refer to different personalities.

Moreover, WWE has filed several Community Trademarks representing the names of the wrestling shows that it organises, which can only be used for one wrestling season as the names of the events change from one sports season to the next. These trademarks have most likely not been used over the course of the last five years.

Furthermore, WWE has filed several Community Trademarks consisting of generic terms in current use, in English, in French, nouns, qualifying adjectives or even simple letter of the alphabet, even though it cannot purport to prevent all actors from the market, notably of textile, from using these

common words or letters in business without creating an incommensurable and entirely unlawful monopoly.

Thus, nullity is sought by the plaintiff for the 291 trademarks filed by WWE, and described in the chart below, as these filings have obviously been made systematically by WWE, in spite of trademark legislation that aims at a specific objective and not of creating monopolies for multinationals but to clearly identify the origin of the product and/or services offered to the consumer, in the sole interest of the latter.

### Summary Chart of Community Trademarks Improperly Filed by WWE
See French original.

For all of the abovementioned reasons, the Community Trademarks described in the chart above should thus be cancelled by the Paris Court of First Instance, as they have only been filed for the purpose of establishing, improperly and systematically, unfair monopolies for the names or terms in current use.

#### 2.4    For Additional Measures of Expertise following the investigation of 17 June 2010

By order of 25 May 2010 (exhibit No. 39), the President of the Paris Commercial Court authorised Sun City to proceed with the investigation to put in evidence the alleged acts charged against the companies SCEMAMA and SCEMAMA International through the intermediary of an appointed bailiff who confiscated the items found following the investigation.

On 17 June 2010, SCP Chevrier de Zitter & Asperti, Bailiffs, brought the aforementioned order to the companies SCEMAMA and SCEMAMA International and thereafter carried out the investigation with the help of a computer expert at the premises of the two companies in the presence of their legal representatives and their attorney, transparently and in compliance with the principle of contradiction.

On site, it seems that during the investigations, the SCP Chevrier de Zitter & Asperti has found and copied items matching the search criteria set forth in the order. Since 17 June 2010, these items have been kept by the SCP Chevrier de Zitter & Asperti who are preparing minutes of the investigation carried out on 17 June 2010. The nature and content of the items found is to date unknown to the company Sun City.

By letter of 25 June 2010 (exhibit 42), WWE's attorney have threatened SCP Chevrier de Zitter & Asperti with proceedings if the seized documents are communicated to the company Sun City arguing that the seized items reveal business secrets and that their release to Sun City would cause considerable injury to WWE.

36

Before the presiding judge, it will be requested that SCP Chevrier de Zitter & Asperti furnish a copy of all the items seized (on a CD-Rom) to the Court and to the defendants without giving a copy of the content of the items to Sun City until the presiding judge has examined and decided whether it is of a confidential nature or not (business secrets, etc.) concerning each of the seized documents.

It emerges from the threats of WWE that it and the other co-defendants are trying, by every possible means, to avoid the disclosure of certain incriminating information concerning their unfair actions.

## III.    For Article 700 of the Code of Civil Procedure

The company Sun City has been in contact with the company WWE since the summer of 2009. All information of a clarifying nature regarding the situation of the textile products and definitively eliminate the idea of the products being counterfeit has been given to the company WWE (see exhibits Nos. 27, 28 and 29). The defendants have acted in a concerted and malicious manner in order to eliminate Sun City from the market by inflicting significant damage, both on a material and a moral level, and with complete disregard for the economic and human interests at stake, notably regarding Sun City's employees.

It is solely due to the wrongful acts of the Defendants that the company Sun City has had to resort to the court in order to have its rights recognised and respected.

It is therefore unreasonable that it should bear the irrecoverable costs that it would be unable to recover in the expenses.

Consequently, the Court must convict the Defendants jointly and severally to pay 15,000€ to the plaintiff in accordance with Article 700 of the Code of Civil Procedure.

**FOR THESE REASONS**

Pursuant to Articles 1382 et seq. of the Civil Code,
Pursuant to Articles 42, 46 et seq., 700 of the Code of Civil Procedure,
Pursuant to the Rule on Community Trademarks No. 40/94 of the Council of 20 December 1993,
Pursuant to Articles L.717-1 et seq. of the Intellectual Property Code,
Pursuant to the quoted jurisprudence,
Pursuant to the exhibits presented in the proceeding,

It is asked of the Paris Court of First Instance to:

- **Declare and rule** the company Sun City admissible and well founded in its demands and, acceding to it;

- **Declare** the invalidity and, in any event, the nullity of the Community Trademarks (described in exhibit 38) belonging to the company WWE;

- **Declare and rule** that the defendants are guilty of anti-competitive actions, notably of unlawfully partitioning the French and Community market for WWE textile products, of illegally fixing the prices, of denigration, of actions having the purpose of diverting Sun City's customers, in particular through the deliberately false and misleading warning letters;

- **Order** jointly and severally the defendants to pay to the company Sun City the provisional amount of **17,221,400€**, as compensation for damages inflicted on the company Sun City, in relation to the loss of orders for WWE textile products for the year 2010 (summer 2010 (January – June 2010) and winter 2010 (July – December 2010)) due to the malicious and false warning letters sent to the plaintiff's customers by the company WWE and the acts of unfair competition and the diverting of the customers conducted by the defendants;

- **Order** jointly and severally the defendants to pay to the company Sun City the provisional amount of **115,974€**, as compensation for damages inflicted on the company Sun City, in relation to the loss of turnover relating to the remaining, not sold, stock of WWE textile products at the end of the year 2009 (winter 2009 (July – December 2009)) due to the same malicious and false warning letters sent to the plaintiff's customers by the company WWE and the acts of unfair competition and the diverting of the customers conducted by the latter and its accomplices;

- **Order** jointly and severally the defendants to pay to the company Sun City the provisional amount of **500,000€**, as compensation for the damages inflicted on the company Sun City, notably due to the serious damage inflicted on its image in front of its customers, the loss of confidence of the same customers following the

unfounded accusations, the arising barriers like having to provide proof of origin for each derivative product sold (see in particular exhibit No. 22);

- **Order** jointly and severally the defendants to publish, at their own expense, the ruling in five (5) newspapers in each of their country of origin chosen by the company Sun City (5 American newspapers, 5 German newspapers and 5 French newspapers), the global costs of each of these publication not exceeding 6000 euro ex. VAT, per publication. To do this, the defendants will have five (5) days to pay to Sun City the price ex. T.T.C. of the publications upon the simple presentation by the latter of the quoted price for the said publications;

- **Order** each of the defendants to publish the ruling, in its national language, on the homepage of each of their official internet sites or on any other site selling the same type of products, directly or indirectly by intermediary, in a manner visible when opening the webpage without the need to tap down (in Times New Roman, size 14), this within 15 days of the pronouncement of the ruling, for the period of 12 months, at the expense of each of the defendants concerned, under penalty of 1000€ per day of in case of delay starting from the pronouncement of the ruling;

- **Order** jointly and severally the defendants to pay to Sun City the amount of 15,000 euro under Article 700 of the Code of Civil Procedure;

- **Order** jointly and severally the defendants the entire costs, including notably the expenses for translations of the acts relating to the proceeding, as the Summons, as well as, the exhibits and the Court's ruling to come in each of the defendants' language, the costs relating to the seizure performed by Mr. De Zitter and Mr. Asperti following the order upon request pronounced by the President of the Paris Commercial Court on 25 may 2010, the costs relating to the internet investigation minutes of the Bailiff (exhibit 40);

- **Declare** that the company Sun City reserves the right to demand additional measures of expertise;

- **Order** the provisional enforcement of the ruling to come.


### SUBJECT TO ALL RESERVATIONS

## LIST OF EXHIBITS

**EXHIBIT No. 1:**    Extracts from the official internet site of the company World Wrestling Entertainment, Inc.

**EXHIBIT No. 2:**    License contract for WWE merchandise entered into on 28 January 2009 between the company WWE and the Portuguese company J.F. Ramos (and the French translation)

**EXHIBIT No. 3:**    Equivalent of K-Bis extract for the German company TVMania GmbH (and the French translation) and copy of the pages of its official internet site www.tvmania.de, directing in particular its French customers to the company Scemama

**EXHIBIT No. 4:**    K-Bis extract for the French company Sun City – CIE DND

**EXHIBIT No. 5:**    Copy of the internet page presenting the TVMania at the ISPO 2009 with, as contact, "gmarechal@scemama-int.com"

**EXHIBIT No. 6:**    Pages from the domain name directory showing that the two domain names Lamaloli.fr and Lamaloli.com belongs to Mr. Yaïr Agami (www.lamaloli.fr, 6.1 and www.lamaloli.com, 6.2) and copy of the 2010 Lamaloli catalogue (6.3)

**EXHIBIT No. 7:**    Confirmation email from the company Lamaloli GmbH redirecting its French customers to the company Scemama for the opening of a wholesale account on the site www.lamaloli.fr

**EXHIBIT No. 8:**    Company information concerning the German company Lamaloli GmbH

**EXHIBIT No. 9:**    K-Bis extract for the company Scemama SNC and company documents

**EXHIBIT No. 10:**    Letter with warning notice of 7 December 2009 sent by the board of directors in the company WWE to the company Sun City

**EXHIBIT No. 11:**    Reply from the company Sun City of 9 December 2009 to the board of directors in WWE

**EXHIBIT No. 12:**    Email sent on 9 December 2009 by the company Sun City to the company J.F. Ramos

**EXHIBIT No. 13:**    Email from the company J.F. Ramos sent to the company WWE (and the French translation)

| EXHIBIT No. 14: | 14.1) Approval of products number H09F7806 by WWE of 30/06/09 |
|---|---|
| | 14.2) Approval of products number H09F7807 by WWE of 30/06/09 |
| | 14.3) Approval of products number E10F4115 by WWE of 30/06/09 |
| | 14.4) Approval of products number E10F7622 by WWE of 30/06/09 |
| | 14.5) Approval of products H09F1732 and H09F688 by WWE of 30/06/09 |
| | 14.6) Approval of products number E10F1580 by WWE of 11/10/09 |
| | 14.7) Approval of products numberH09F9241 by WWE of 30/06/09 |
| | 14.8) Approval of products H09F4136 and H09F9242 by WWE of 30/06/09 |
| | 14.9) Approval of products number E10F7677 by WWE of 30/06/09 |
| | (and French translation) |

EXHIBIT No. 15:    Invoice made by the company J.F. Ramos for the Official WWE Products sold to the company Sun City and sold by Sun City to its French customers (and French translations)

EXHIBIT No. 16:    Copy of the royalty declaration made by the company J.F. Ramos and sent to CPLG, WWE's agent, for the period from 01/10/2009 to 31/12/2009 covering the official WWE products sold by J.F. Ramos to Sun City (and French translation)

EXHIBIT No. 17:    Invoice of 7 December 2009 sent by the company CPLG, agent for WWE, for the second part of the Minimum Guarantee (8,750$) to the company J.F. Ramos on behalf of WWE (and French translation)

EXHIBIT No. 18:    Wire transfer order of 33,006.92 US$ from the company J.F. Ramos to the account of CPLG, WWE' agent) on behalf of WWE, entitled payment of royalties for the period from 01/10/2009 to 31/12/2009 (and French translation)

EXHIBIT No. 19:    Statement from the manager of the company J.F. Ramos of 18 February 2010 confirming that no action has been taken against him by the company WWE concerning its license contract for WWE products

EXHIBIT No. 20:    K-Bis extract and company documents for the company Scemama International showing the links between the internet site www.lamaloli.fr, the company Lamaloli GmbH and the two companies Scemama SNC and Scemama International SARL

EXHIBIT No. 21:    Extract from the professional textile site, Site du Sentier, showing the company Lamaloli GmbH and the internet site www.lalaloli.fr

**EXHIBIT No. 22:**   Email of 23 December 2009 sent by the company Kiabi to the company Sun City asking for a copy of Sun City's contract with the company WWE concerning the products sold to Kiabi

**EXHIBIT No. 23:**   Email of 9 December 2009 from the company Agora to the company Sun City asking for copies of all licenses covering derivative products purchased from Sun City as well as a letter taking full responsibility for all products delivered in 2009

**EXHIBIT No. 24:**   Email of 10 December 2009 from the central purchasing group for E.Leclerc, le Galec, making Sun City aware of its hesitation to continue with WWE products for the winter 2010

**EXHIBIT No. 25:**   Registered letter from the company E.Leclerc sent on 14 December 2009 to the company Sun City informing it of its central purchasing group's (Galec) receipt of the warning notice from the company WWE

**EXHIBIT No. 26:**   Registered letter with warning notice of 7 December 2009 sent by the board of directors in WWE to the company Vetura SA, customer of Sun City, regarding the "sale of _counterfeit_ products of trademarks belonging to Worlds Wrestling Entertainment Inc."

**EXHIBIT No. 27:**   Email from Mr. Ross Walker (WWE) to Mr. Michel Benchetrit (Sun City) of 27 July 2009 demanding an explanation regarding the WWE products sold (and French translation)

**EXHIBIT No. 28:**   Email with reply from Mr. Michel Benchetrit (Sun City) to Mr. Ross Walker (WWE) of 30 July 2009 explaining that the WWE products sold were official WWE products sold by a licensee (and French translation)

**EXHIBIT No. 29:**   Email from Mr. Ross Walker (WWE) to Mr. Michel Benchetrit (Sun City) of 23 September 2009 thanking Mr. Michel Benchetrit for his reply of 30 July 2009 and closing the affair (and French translation)

**EXHIBIT No. 30:**   Email from Mr. Michel Benchetrit (Sun City) to Mr. Ross Walker (WWE) of 23 December 2009 following the sending of warning notices to Sun City's customers and the unfair competition and diverting of customers of one of WWE's licensees with obvious complicity of the latter (and French translation)

**EXHIBIT No. 31:**   Email sent by the company CPLG, agent for WWE, on behalf of the latter, to the company Kiabi of 24 June 2009 informing it that the products Kiabi

was planning to purchase from the company Cie DND (Sun City) could only be counterfeit

**EXHIBIT No. 32:**  Elements relating to the company CPLG, license agent for the company WWE in certain European countries

**EXHIBIT No. 33:**  Copy of the Lamaloli GmbH's advertisement published in the Journal du Textile on 9 February 2010 showing WWE products sold on the internet site www.lamaloli.fr

**EXHIBIT No. 34:**  Email received on 10 November 2009 by J.F. Ramos attached with photographs of WWE products taken in the supermarket E.Leclerc in Touques, France by the company TVMania GmbH and its accomplices, showing the words "WWE cross boarding" in the upper left hand corner, manifestly showing the surveillance and the strict control of the market operated by WWE, its licensee TVMania and its partners (and French translation)

**EXHIBIT No. 35:**  Table comparing the wholesale prices charged by the company J.F. Ramos and the companies Scemama SNC, Scemama International and Lamaloli GmbH for the sale of the same official WWE products and related evidence (35.1 to 35.4)

**EXHIBIT No. 36:**  Pre-order from the company AGORA to the company Sun City No. 9020841 in the amount of 802,517€ of WWE textile products for the summer collection 2010 (January – June 2010)

**EXHIBIT No. 37:**  Summary chart of Sun City's turnover by client showing the losses suffered by the company Sun City due to the malicious and unfair actions of the defendants

**EXHIBIT No. 38:**  Summary chart of the 291 trademarks filed by the company WWE and And of which nullity and cancellation is demanded by the company Sun City

**EXHIBIT No. 39:**  Petition and Order granted by the President of the Paris Commercial Court on 25 May 2010

**EXHIBIT No. 40:**  Internet minutes relating to the companies WWE, TVMania and Lamaloli

**EXHIBIT No. 41:**  Annual accounts for 2008 and 2009 for the company Sun City

**EXHIBIT No. 42:**      Letter of 25 June 2010 from Cabinet Gilbey Delorey to SCP Chevrier de
                      Zitter & Asperti

(THE ORIGINAL EXHIBITS ARE AVAILABLE UPON REQUEST AT THE OFFICE OF MR.YALOZ)