IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WORLD WRESTLING ENTERTAINMENT, INC. | ) ) ) | Civil Action No. 3:10-cv-01399-CFD |
| Plaintiff, | ) | |
| vs. | ) ) | |
| J.F. RAMOS - REPRESENTAÇÕES, LDA | ) ) ) | MARCH 28, 2011 |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS OR IN THE ALTERNATIVE STAY PROCEEDINGS**

Plaintiff World Wrestling Entertainment, Inc. ("WWE") respectfully submits this memorandum of law in opposition to the motion to dismiss or in the alternative stay proceedings (the "Motion to Dismiss") filed by Defendant J.F. Ramos – Reprentações, LDA ("Ramos").

**I. INTRODUCTION**

Ramos' Motion to Dismiss is based on an argument that is squarely contrary to well-settled Second Circuit law. This is a garden variety declaratory judgment action regarding contractual indemnification obligations, just like the legion of insurance coverage cases that are prevalent in courts throughout this Circuit and other jurisdictions. Specifically, WWE is seeking a declaration that Ramos must indemnify it, pursuant to the parties' written contract, for defense costs and damages incurred in connection with an underlying lawsuit against WWE now pending in the French courts. Ramos argues that WWE's declaratory judgment claim is not ripe because it involves future indemnification obligations that may not mature. This argument, however, has been decisively rejected by the Second Circuit.

1

Directly contrary to Ramos' argument, the Second Circuit found nearly twenty years ago that "litigation over insurance coverage has become the paradigm for asserting jurisdiction ***despite future contingencies that will determine whether a controversy ever actually becomes real***." *Assoc. Indem. Corp. v. Fairchild Inds.*, 961 F.2d 32, 35 (2d Cir. 1992) (emphasis added). Similarly, the Second Circuit has observed that:

> [t]he respective interests and obligations of insureds and insurers, when disputed, require determination ***much in advance of judgment*** since they will designate the bearer of ultimate liability in the underlying cases and hence the bearer of the onus and risk of settlement. . . .  [D]eclaratory judgment relief was intended to avoid precisely the "accrual of avoidable damages to one not certain of his rights."

*Cont'l Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 738 (2d Cir. 1992) (quoting *AC and S, Inc. v. Aetna Cas. and Sur. Co.*, 666 F.2d 819, 823 (3d Cir. 1981).  Indeed, in recently rejecting an argument identical to the one asserted by Ramos here, the U.S. District Court for the Southern District of New York cited precedent from the U.S. Supreme Court, the Second Circuit, the Third Circuit, the Fourth Circuit, and the Eleventh Circuit, in observing (with a considerable degree of understatement) that "courts have commonly held that there is no jurisdictional bar to hearing such claims."  *Rosen v. Mega Bloks, Inc.*, No. 06 Civ. 3474(LTS)(GWG), 2009 WL 929474, at*4 (S.D.N.Y. April 7, 2004).

In light of this abundant authority, there can be no real dispute that WWE's declaratory judgment claim is an appropriate vehicle for raising and resolving the contractual indemnification issue on which this lawsuit is predicated.  Ramos's Motion to Dismiss, therefore, should be denied.

## II.  ARGUMENT

A.  **Under the Correct Declaratory Judgment Standard, this Court Has Jurisdiction to Entertain WWE's Complaint As A Matter Of Well-Settled Second Circuit Law**

Flawed from the outset, Ramos' legal analysis begins by applying an incorrect legal standard.  Ramos contends that a two-part "ripeness" test applies—*i.e.*, the fitness of the issues for review and the hardship to the parties of withholding court consideration.  *See*  Ramos Br. at 5.  Not so.  In reality, the ripeness standard cited by Ramos only guides courts exercising their discretion in granting declaratory or injunctive relief from administrative decisions.  *See Abbot Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967) (holding that this ripeness review is required to prevent courts from "entangling themselves in abstract disputes over administrative policies" and to "protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties").

For declaratory judgment actions more generally, the Second Circuit has ruled, "[t]he standard for ripeness in a declaratory judgment action is that there is a substantial controversy, between the parties, having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  In making this determination, the Second Circuit instructs courts to examine:  "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *See Duane Reade,* 411 F.3d at 389.  "If *either* prong is met, the action *must* be entertained."  *Cont'l Cas.*, 977 F.2d at 737 (emphasis added).

Accordingly, the applicable Second Circuit standard differs from the erroneous standard urged by Ramos in at least two significant respects.  First, judicial review is mandatory, not

3

discretionary; if either of the qualifying prongs is met, the Court must hear the case.  Second, the controlling legal standard does not require the plaintiff to show hardship in the event the court dismisses the case.

Applying the correct legal standard, courts in this Circuit have consistently ruled that declaratory judgments are appropriate means to determine contractual indemnification obligations contract even *before* the underlying liability has been established.  *See SR Int'l Bus. Ins. Co., Ltd. v. Allianz Ins. Co.*, 343 Fed. App. 629, 631-32 (2d Cir. 2009) (determining whether primary or excess insurers would have first priority on tort recoveries against third parties causing loss, even though no such recoveries had been made); *Duane Reade*, 411 F.3d at 388-89 (determining the scope of business interruption insurance though the length of interruption and thus the length of coverage had not been established); *Cont'l Cas. Co.*, 977 F.2d at 737-38 (determining whether insurer had defense and indemnity obligations with respect to pending state court actions); *Assoc. Indem.*, 961 F.2d at 35-36 ("[T]hat the liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action . . . . [L]itigation over insurance coverage has become the paradigm for asserting jurisdiction despite future contingencies that will determine whether a controversy ever becomes real"); *see also Empire Fire & Marine Ins. Co. v. Elrac, Inc.¸* No. 04 Civ. 10315 (GEL), 2006 WL 3734308, at *2 (S.D.N.Y. Dec. 18, 2006) ("It has long been well-established that a liability insurer may bring an action for a declaratory judgment against the parties in an underlying lawsuit involving its insured without waiting for the underlying action to proceed to judgment."); *accord White v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 913 F.2d 165, 168 (4th Cir. 1990) (holding that the fact that the plaintiff in a declaratory action "has not yet obtained a judgment against [the

underlying defendant] does not make the action any less definite and concrete, nor does it vitiate the adversity of the parties' interests").

These same principles equally have been applied to declaratory judgment actions regarding contractual indemnity obligations not under an insurance policy. *See Rosen*, 2009 WL 929474, at *4 ("Nor does this Court view the fact that this is a contractual indemnity obligation – rather than an insurance policy – . . . to be a distinction that affects the 'case or controversy' analysis. In both instances, there is equally 'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'") (citations omitted). Rejecting the identical argument asserted here by Ramos that "the declaratory judgment claim is not ripe because it involves a future indemnification obligation that may not mature," the Court in *Rosen* held that "courts have commonly held that there is no jurisdictional bar to hear such claims." *Id.* In fact, citing seventy-year-old U.S. Supreme Court precedent, *Md. Cas. Co.*, 312 U.S. at 273-74, the Court explicitly concluded that "[t]he Supreme Court . . . has already ruled that claims of this kind are justiciable." *Id.* (describing *Maryland Casualty* as holding "that there was Article III jurisdiction over a claim by an insurance company for declaratory relief with respect to an indemnification obligation even though the underlying state court action had not yet resulted in a judgment"). Further recognizing that certain district court cases decided prior to the Second Circuit's decision in *Duane Reade* had ruled to the contrary, the *Rosen* court expressly concluded that "these decisions cannot be squared with the Supreme Court's *Maryland Cas. Co.* decision and the Second Circuit precedent explicitly recognizing that contingent liability in an insurance coverage case 'does not necessarily defeat jurisdiction of a declaratory judgment action.'" *Id.* (citations omitted).

Tellingly, Ramos has cited no contrary authorities and, in fact, the lead cases cited in Ramos' Memorandum of Law are in full accord.  *See* Ramos Br. at 5 (citing *Md. Cas.*, 312 U.S. at 273; *Duane Reade*, 411 F.3d at 388).  In particular, in *Duane Reade*, the Second Circuit found the same argument asserted by Ramos here – "that the district court lacked jurisdiction to issue any ruling because there was no certainty that the case presented an actual 'case or controversy'" – to be "easily rejected."  Affirming the district court's jurisdiction to entertain the declaratory judgment action, the Second Circuit went on to interpret the scope of the business interruption coverage at issue (relating to a Duane Reade pharmacy in the World Trade Center) despite the fact that the "hypothetical time it would reasonably take Duane Reade to 'repair, rebuild, or replace' its WTC store at a suitable location" had not been established.  *Duane Reade*, 411 F.3d at 398.  The remainder of the cases upon which Ramos relies concern inapposite actions seeking the invalidation of statutes or regulations.  *See* Ramos Br. at 5 (citing *Abbot Labs*, 387 U.S. at 149 (concerning pre-enforcement review of regulations promulgated by the Commissioner of Food and Drugs); *AMSAT Cable Ltd. v. Cablevision of Conn. Ltd.*, 6 F.3d 867, 872 (2d Cir. 1993) (concerning a constitutional challenge to a cable access law); *Thomas v. City of N.Y.*, 143 F.3d 31 (2d Cir. 1998)(concerning a constitutional challenge to New York city local laws and regulations concerning livery vehicles); *Office of Consumer Counsel v. S. New Eng. Tel. Co.*, 502 F. Supp. 2d 277, 285 (D. Conn. 2007) (concerning an order to comply with the Cable Communications Policy Act of 1984)).

Accordingly, this Court should not dismiss or stay this action, which presents a ripe case and controversy requiring judicial resolution now.

B.     **Even Under Ramos' Erroneous Legal Standard, This Court Has Jurisdiction To Entertain WWE's Declaratory Judgment Claim**

Ramos suggests that WWE will suffer no hardship if its motion is granted. As an initial matter, and as noted above, hardship is an irrelevant consideration under the appropriate legal standard. *See Duane Reade*, 411 F.3d at 388-89. Regardless, WWE actually will suffer hardship if this case is dismissed. The already-incurred expense and delay of service on a foreign corporation, and the jeopardy of WWE being hailed into a foreign court by Ramos to resolve this dispute when Ramons believes it has become ripe (coupled with the risk of WWE losing the contractually-specified forum of Connecticut in that event), constitute hardships militating against dismissal. Furthermore, an early resolution of the indemnification issue is important to WWE's formulation of its litigation and settlement strategy in the underlying action. *See SR Int'l*, 343 Fed. App. at 632 (holding that declaratory judgments interpreting contracts serve a useful purpose in "avoiding additional litigation and assisting the parties in formulating settlement positions and developing settlement strategy"). Thus, proceeding with this declaratory judgment action offers more than mere relief from uncertainty; it would have concrete benefits to WWE, and, conversely, depriving WWE of the benefits of prompt judicial relief in this action would be injurious to WWE. The Court's dismissal of this action would exacerbate WWE's uncertainty and compel WWE to consider settlement strategies in the underlying action without benefit of the resolution of the indemnification issues.

Ramos also incorrectly suggests that because French courts typically require the loser to pay the winner's costs and attorneys' fees, WWE may never incur attorneys' fees in the underlying action. In addition to being merely a variation of Ramos's first argument (i.e., let's wait and hope a real dispute currently being litigated in France will simply go away), it ignores the practical realities of litigating abroad. For example, French courts often do not award the full

7

amount of attorneys' fees to the prevailing party, because they must consider factors like equity and the relative resources of the party as well as the reasonableness of the fees claimed.  *See* Ronald J. Scalise, Jr., *Why No "Efficient Breach" in the Civil Law?*, 55 Am. J. Comp. L. 721, 753 (2007) (showing that, in France, "[t]he harshness of the [loser pays] rule is mitigated by several factors"); *see generally* W. Kent Davis, *The International View of Attorney Fees in Civil Suits*, 16 Ariz. J. Int'l & Comp. L. 361, 405-14 (1999) (summarizing common exceptions to the "loser pays" rule).  Meanwhile, even where full attorneys' fees are awarded, the awards often are negotiated in order to ensure payment.  In other words, even if WWE were to prevail in the underlying action in France, it faces the very real prospect of incurring and paying at least a portion of its own attorneys' fees—fees for which Ramos is contractually obligated to indemnify WWE.

### III.  CONCLUSION

For all of the foregoing reasons, WWE respectfully requests that this Court deny Ramos's Motion to Dismiss in all respects.

                Respectfully submitted,

                PLAINTIFF WORLD WRESTLING
                ENTERTAINMENT, INC

                /s/ Jonathan B. Tropp
                Jonathan B. Tropp (ct11295)
                Richard P. Colbert (ct08721)
                Day Pitney LLP
                One Canterbury Green
                Stamford, CT  06901
                Telephone: (203) 977-7300
                Facsimile: (203) 977-7301
                Email: jbtropp@daypitney.com
                Email: rpcolbert@daypitney.com

*Of Counsel:*
Jerry S. McDevitt
Curtis B. Krasik
J. Nicholas Ranjan
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA  15222
Telephone: (412) 355-6500
Facsimile: (412) 355-6501
Email: jerry.mcdevitt@klgates.com
Email: curtis.krasik@klgates.com
Email: nicholas.ranjan@klgates.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of March, 2011, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF system.

/s/ Jonathan B. Tropp