UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WORLD WRESTLING ENTERTAINMENT, INC., : : |
|     Plaintiff, : |
| : 3:10-cv-1399 (CFD) |
|     v. : |
| : |
| J.F. RAMOS – REPRESENTACOES, LDA : : |
|     Defendant. : |

**RULING ON MOTION TO DISMISS**

**I.	Introduction**

Plaintiff World Wrestling Entertainment ("WWE") brings this declaratory judgment and breach of contract action against defendant J.F. Ramos – Representações, LDA ("Ramos"). WWE and Ramos entered into a licensing agreement that allows Ramos to distribute WWE brand products. WWE was sued in France by one of Ramos's customers, and now seeks a declaration that Ramos is obligated under the parties' license agreement to indemnify WWE for all damages, attorneys' fees and costs incurred in that action. Ramos moves to dismiss the case for lack of subject matter jurisdiction, arguing the case is not yet ripe for judicial review.

**II.	Background**[1]

WWE is a Delaware corporation with its principal place of business in Stamford, Connecticut. WWE is an entertainment company which conducts professional wrestling entertainment. WWE develops television programming, pay-per-view programming, and live events, and licenses and sells consumer products featuring its brands. J.F. Ramos –

---

[1] Unless otherwise stated, the following facts are taken from the Complaint.

Representações, LDA is a Portuguese corporation that distributes a variety of licensed products in Europe. WWE and Ramos entered into a license agreement dated January 1, 2009, with a term to expire on December 31, 2010, granting Ramos the non-exclusive right to license and use WWE's intellectual property in connection with the manufacture and distribution of products such as t-shirts, hats and gloves.

Section A(2)(b) of the standard terms and conditions of the license agreement require that Ramos obtain WWE's pre-approval in order to sell and distribute any licensed products. Section L(1)(a)(i) authorizes WWE to terminate the license agreement "[i]f Licensee has failed to comply with any requirement of the approval process" described in Section A(2)(b). In 2009, Ramos manufactured certain clothing containing WWE's intellectual property that WWE alleges it was unaware of, and that was not submitted for approval to WWE as required by the license agreement. Ramos then sold this allegedly unauthorized clothing to a French company, Sun City, CIE-DND ("Sun City"), which in turn sold the clothing to various French supermarkets. When WWE became aware of the sale of the counterfeit clothing, it sent a cease-and-desist letter to Sun City. Sun City then asked Ramos if the counterfeit clothing had been approved, and in response, Ramos allegedly provided fraudulent documents to Sun City which falsely showed that WWE had approved the products.

On July 19, 2010, WWE was served with a complaint filed by Sun City in the Paris Court of First Instance (referred to as "underlying action"). In the underlying action, Sun City brought claims against WWE as well as four other French and German companies, alleging that the defendants engaged in unfair competition by partitioning the French and European market for WWE merchandise. Sun City also claims that WWE engaged in unfair commercial practices by

diverting Sun City's customers through false accusations of counterfeiting.  Sun City seeks damages against WWE in excess of 17 million Euros.

Section (H)(1) of the standard terms and conditions of the licensing agreement between WWE and Ramos requires Ramos to indemnify WWE for its losses, damages, attorneys' fees, and similar costs for any claim against WWE arising from Ramos's unauthorized use of the licensed products.  Section H(1) provides:

> Licensee will be solely responsible for and will indemnify, defend, and hold WWE and its licensees, successors and assigns, parent corporations, member corporations, subsidiaries and affiliates and its and their respective officers, directors, members, employees, advertisers, insurers and representatives harmless from any and all claims, suits, liabilities, judgments, penalties, losses, costs, damages, and expenses resulting therefrom, including reasonable attorneys' fees (including an appropriate allocation for in-house counsel and paralegal fees) arising from or by reason of or in connection with the manufacture, distribution, advertising, promotion, offering for sale and sale of the Licensed Products . . .

On September 2, 2010, WWE notified Ramos that it was terminating Ramos's license agreement for, among other things, Ramos's breach of Section A(2)(b) of the standard terms and conditions of the licensing agreement.  WWE also filed this present action, seeking a declaration of Ramos's obligations under the indemnification provisions of the licensing agreement, and damages for Ramos's breach of contract in the amount of the attorneys' fees and costs already incurred in the underlying action.

Ramos filed this motion to dismiss or in the alternative, to stay proceedings, arguing that WWE's claims are not yet ripe for judicial review, given the pendency of the underlying litigation in France.

### III.  Applicable Law and Discussion

Ramos bring its motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil

Procedure, arguing the Court lacks subject matter jurisdiction because the case is not yet ripe for judicial review. Under that rule, a case is properly dismissed "when the court lacks the statutory or constitutional power to adjudicate the case." Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir. 1996). As with a motion to dismiss pursuant to Rule 12(b)(6), "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff." Raila v. United States, 355 F.3d 118, 119 (2d Cir. 2004). Both the moving and non-moving parties "may use affidavits and other materials beyond the pleadings themselves in support of or in opposition to a challenge to subject matter jurisdiction." Matos v. United States Dept. of Housing & Urban Dev., 995 F. Supp. 48, 49 (D. Conn. 1997) (citing Land v. Dollar, 330 U.S. 731, 735 (1947)).

"Ripeness is a jurisdictional inquiry" because it "is a doctrine rooted in both Article III's case or controversy requirement and prudential limitations on the exercise of judicial authority." Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 347 (2d Cir. 2005). The ripeness doctrine's "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." Abbott Laboratories v. Gardner, 387 U.S. 136, 148 (1967), overruled on other grounds, Califano v. Sanders, 430 U.S. 99 (1977). Ripeness, therefore, is "peculiarly a question of timing" as cases may later become ready for adjudication even if deemed premature on initial presentation. Reg'l Rail Reorganization Act Cases, 419 U.S. 102, 140 (1974).

The Declaratory Judgment Act provides a statutory basis for granting declaratory relief "[i]n a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). To decide whether an action for declaratory judgment is ripe for review, the U.S. Court of Appeals for the

Second Circuit has instructed district courts to ask: "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co., 411 F.3d 384, 389 (2d Cir. 2005).[2] Even if a district court determines that it does have jurisdiction to hear a declaratory judgment action, the court may nevertheless refuse to exercise jurisdiction. Dow Jones & Co., Inc. v. Harrods Ltd., 346 F.3d 357, 359 (2d Cir. 2003) (noting that courts have consistently interpreted the "permissive language" of 28 U.S.C. § 2201(a) "as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory judgment action that they would otherwise be empowered to hear").

In general, federal courts have held that declaratory judgments are appropriate means to determine indemnification obligations even before any underlying liability has been established. This question arises most frequently in cases regarding insurance coverage. See, e.g., Associated Indem. Corp. v. Fairchild Industries, Inc., 961 F.2d 32, 35 (2d Cir. 1992) ("[L]itigation over insurance coverage has become the paradigm for asserting jurisdiction despite future contingencies that will determine whether a controversy ever actually becomes real.") (internal citation omitted). Courts have also reached the same conclusion when the indemnity obligation stems from a contract that is not an insurance policy. See Rosen v. Mega Bloks Inc., No. 06-cv-3474, 2009 WL 929474 at *4 (S.D.N.Y. Apr. 7, 2009) (the fact that a contractual indemnity obligation rather than an insurance policy was at issue was not a distinction that affected the

---

[2] Ramos argues in its brief that the ripeness test requires courts to consider the balance of hardships on the parties if review of the claim is delayed. While this is a prong of the general test for ripeness articulated by the U.S. Supreme Court in Abbott Laboratories, the more specific test articulated by the Second Circuit for determining the ripeness of declaratory judgment actions governs here.

"case or controversy" analysis).

The complex nature of the underlying action in this case distinguishes it from the more straightforward declaratory judgment actions which deal with an insurance coverage "paradigm." In the paradigmatic insurance case, the court may issue a declaratory judgment on the insurer's indemnification obligations despite not yet knowing whether the insured may ultimately be found liable for damages. Such a declaration serves a useful purpose in clarifying or settling the legal issues involved, because after the declaratory judgment, the insured knows out of whose pocket—his or his insurer's—any damages and costs of defense will be paid. In this case, even were the Court to determine the scope of Ramos's indemnification obligation pursuant to its licensing agreement with WWE, such a declaration would not do much to clarify which party will be responsible if Sun City prevails in the underlying litigation. Only some of Sun City's claims in the underlying litigation relate to allegations that Ramos sold products in violation of its licensing agreement. Other claims allege that the structure of WWE's licensing agreements unfairly partitioned the French market in violation of French and European law. Any declaration by this Court about the extent of Ramos's obligations under its licensing agreement with WWE would not substantially clarify who—WWE or Ramos—is obligated to pay Sun City if Sun City ultimately prevails in the French litigation. Because any declaration would, at best, only tentatively clarify legal issues involved in the underlying suit, and would not offer WWE relief from uncertainty, the Court exercises its discretion and finds this declaratory judgment action is not appropriate at this time.

### IV. Conclusion

For the reasons set forth above, the defendant's motion to dismiss [Dkt. # 10] is

GRANTED, without prejudice.

SO ORDERED this 30th day of August 2011, at Hartford, Connecticut.

/s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**